JOHN R. KELLY, APPELLEE, V. JOHN H. WEHN, APPELLANT.

FILED DECEMBER 31, 1923. No. 22642.

1. Trial: DIRECTION OF VERDICT. Where different minds can arrive at only one conclusion from the undisputed facts of the case, reasoning honestly and rationally, the court may direct a verdict consistent with that conclusion.

2. Banks and Banking: SALE OF STOCK: DIRECTION OF VERDICT. In this case the vendor and the purchaser of 52 shares of stock

Kelly v. Wehn.

in a bank agreed that the vendor would take up 52 per cent. of any notes and shortages among the assets of the bank in case the purchaser could show that the same were worthless and uncollectible by a subsequent time stated. *Held*, that the evidence was sufficient to show beyond dispute that a sufficient showing was made in this regard to make the vendor liable to the purchaser for 52 per cent. of certain notes and shortages sued upon, and that the trial court was justified in directing a verdict in favor of the purchaser and against the vendor therefor.

APPEAL from the district court for Morrill county: RALPH W. HOBART, JUDGE. *Affirmed.*

*Williams, Hurd & Neighbors,* for appellant.

*Eugene Burton* and *Robert Reddish, contra.*

Heard before MORRISSEY, C. J., LETTON and DEAN, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

The appellee, John R. Kelly, was the plaintiff in the district court, and the appellant, John H. Wehn, was the defendant. The former sued the latter to recover 52 per cent. of the face value of worthless assets—notes and shortages—of the Angora State Bank. It seems that Wehn owned 52 per cent. of the capital stock of said bank and sold it to Kelly under the following contract in writing:

"Angora, Nebraska, August 13, 1919.

"Received of J. R. Kelly of Angora, Nebraska, one thousand dollars, being part of first payment on purchase price of fifty-two shares of the capital stock of Angora State Bank of Angora, Nebraska, as follows: Fifty-two shares at actual value plus two thousand dollars premium, actual value to be determined as follows: All earnings of whatsoever nature to be computed to date and all expense and interest owing to be deducted; which result to be added to capital stock and surplus determines the actual value. Balance of purchase price to be paid on or before September 15, 1919.

"It is understood and agreed that J. H. Wehn, as selling party hereto, will take up 52 per cent. of any notes in bank

at date of transfer, which purchaser can show is worthless and uncollectible by October 15, 1919.

"It is understood and agreed that the purchaser will use his best efforts to collect without cost as they become due all rediscounts of seller. J. H. Wehn as selling party hereto agrees to pay 52 per cent. of any shortages which may be found and, should any shortages appear, seller will have the right and privilege to examine and audit any books and accounts that he may desire in connection with such shortages.

"J. H. Wehn agrees that he will not reengage in the banking business in Angora, Nebraska, within a perioᵈ of five years. Upon ·full and complete payment being made as above provided, J. H. Wehn agrees to resign his position as vice president, also as director, and procure the resignation of J. W. Wehn as director and to assign his and J. W. Wehn's stock to the order or J. R. Kelly.

"J. H. Wehn,<br>"J. R. Kelly."

Following the execution of this contract, Wehn made and delivered to Kelly a written statement under date of September 12, 1919, of the assets and liabilities of the bank, including as assets under the name of loans and discounts all of the notes of the bank and a claim for $4,874.65 against the Fred L. Case estate. Kelly paid Wehn $9,344.48 for the stock according to the contract and then, having found by October 15, 1919, as he alleges, worthless notes and shortages among the assets of the bank amounting to practically $13,245.02, and having vainly demanded settlement therefor from Wehn, he brought the said action against said Wehn for 52 per cent. of such sum, or $6,885.84. Wehn denied all the material alleᵍations of the lengthy petition, except the existence of the bank, his official connection with it, his ownership of 52 per cent. of its stock, the making of the said contract of sale, and the making of said written statement under date of September 12, 1919. He also appropriately and sufficiently pleaded all the defenses argued in his brief and hereafter considered in the

Kelly v. Wehn.

opinion. The court upon the conclusion of the trial directed a verdict in favor of the plaintiff, Kelly, and against the defendant, Wehn, for 52 per cent. of the amount due September 12, 1919, on the following notes and accounts, less payments and credits thereon:

| No. | Maker | Date | Due | Principal | Amt. due Sept. 12, 1919, after deduct-ing credits |
|---|---|---|---|---|---|
| 1. | Mary Bowers, | Sep. 23, 1918, | Demand, | $ 15.00 | $ 16.45 |
| 2. | R. M. Carnine, | May 18, 1918, | Demand, | 77.06 | 87.20 |
| 3. | J. W. & C. L. Van Horn, | Sep. 17, 1918, | Demand, | 75.00 | 82.50 |
| 4. | C. L. Van Horn, | Jun. 26, 1918, | Demand, | 1,793.50 | 1,972.75 |
| 5. | C. L. Rowen, | Oct. 4, 1918 | Apr. 4, 1919, | 3,000.00 | 1,961.80 |
| 6. | C. L. Rowen, | Oct. 4, 1918, | Apr. 4, 1919, | 1,000.00 | 1,094.50 |
| 7. | B. E. Maybell, | Sep. 21, 1918, | Demand, | 1,192.00 | 571.30 |
| 8. | Carl E. Philpott, | Jun. 24, 1918, | Dec. 24, 1918, | 150.00 | 168.30 |
| 9. | A. D. Hutchinson, | Jun. 24, 1918, | Dec. 24, 1918, | 150.00 | 168.30 |
| 10. | A. L. Gillespie, | Apr. 15, 1918, | Demand, | 57.85 | 53.80 |
| 11. | A. L. Gillespie, | Jun. 25, 1918, | Dec. 25, 1918, | 150.00 | 168.30 |
| 12. | Carl F. Rowen, | July 20, 1918, | Demand, | 10.00 | 11.15 |
| 13. | C. L. Rowen, | Jan. 27, 1919. | July 29, 1919, | 325.00 | 117.60 |
| 14. | G. T. Rowen, | Nov. 14, 1918, | May 14, 1919, | 977.50 | 901.00 |
| 15. | G. T. Rowen, | Dec. 4, 1918, | Feb. 4, 1919, | 25.00 | 29.25 |

Kelly v. Wehn.

| | | | |
|---|---|---|---|
| 16. H. B. Thompson, | | | |
| Jan. 16, 1919, | May 20, 1919, | 135.60 | 144.40 |
| 17. E. L. Case, | | | |
| July 20, 1918, | Demand, | 581.00 | 581.00 |
| 18. Fred L. Case, | | | |
| Oct. 19, 1918, | Demand, | 1,700.00 | 1,700.00 |
| 19. E. L. Case, | | | |
| Overdraft | ............................ | 1,481.44 | 1,481.44 |
| 20. Fred L. Case, | | | |
| Shortage | ............................ | 747.21 | 747.21 |
| 21. Fred L. Case, | | | |
| Shortage | ............................ | 365.00 | 365.00 |

As the defendant, appellant, says in his brief, the contentions of the parties upon this appeal resolve themselves into two main questions to be decided by this court, first, the effect to be given to the written contract before quoted, and in the second place whether or not defendant had a right to have the facts determined by a jury.

The evidence showed that the defendant bought the described 52 shares of stock in said bank from Fred L. Case, and that the first 12 notes above listed were made during the administration of the bank's affairs by said Case. It shows also that the next four notes were made to said bank during the defendant's administration, and that the last five items, consisting of notes, shortages, and overdrafts, except the Fred L. Case note, which was made during defendant's administration, were made while Case himself was in charge. The evidence also shows that these last five items were carried on the books of the bank by the defendant as a claim for $4,874.65 against the Fred L. Case estate. The evidence further shows that, after Case sold to the defendant and before defendant sold to plaintiff, Case died and defendant was appointed as one of the administrators of his estate, and continued to act as such until its final settlement; that while acting as such administrator defendant took from the bank the first 12 notes above listed, substituted copies therefor, and filed the originals in the county court of Morrill county attached to a claim against the estate

for 52 per cent.· of the amount due on said notes, which he claimed to be due him on the contract he had with Case, made when he purchased the 52 shares of stock from the latter to assure him against loss; that his claims on all of said notes were allowed and paid in whole or in part by the estate; that there was also filed for the bank a claim against said estate for $4,874.65 on the last five items mentioned, and that this claim was allowed in full, but that the bank recovered thereon only about 25 per cent. of the amount, for the reason that the estate was insolvent. The plaintiff testified that on September 12, 1919, the time he paid defendant for his stock, defendant admitted to him orally and in writing that said first 12 notes were worthless and uncollectible; that the three Rowen notes were worthless and uncollectible except for some security, which was to be sold in a few days, but which would not be sufficient to pay the notes in full; and that the said claim of $4,874.65, consisting of notes, overdraft, and shortages, would be paid in full in 30 days. He also testified of his own knowledge that all of these assets were worthless.

Defendant did not testify at all in regard to the value of any of these items. In fact, he refused to be cross-examined upon the subject. But he did testify that he had not told the plaintiff that the $4,874.65 would be paid in 30 days, and that similarly he had not told plaintiff that all of said notes were worthless. But it is in evidence that he not only filed the said paper against the estate, but that he paid over to plaintiff the 25 per cent. which was collected by that means. A letter written by the defendant also appears in evidence. It is as follows:

"Angora, Nebraska, Sept. 12th; 1919.

"To Directors of Angora State Bank,

"Angora, Nebraska,

"Dear Sirs:

"I enclose you herewith two statements of the condition of the Angora State Bank, viz., one of Oct. 8, 1918 (condition of bank at time of my taking charge), one of Sept.

12, 1919 (condition of bank at time of my turning control
to J. R. Kelly).

"In connection therewith I might say the claim account
represents claims against the estate of Fred L. Case, as
follows: $3,762.44 represents notes which Mr. Case was
wholly responsible for, $1,112.21 represents shortage in ac-
counts of the bank during Mr. Case's administration. These
claims have been allowed and will shortly be paid.

"Of the notes in the bank on October 8, 1918, which I
have been unable to collect or satisfactorily renew are the
following: Mary Bowers dated Sept. 23, 1918, $15, R. M.
Carnine dated May 18, 1918, $77.06, J. W. Van Horn dated
Sept. 17, 1918, $75, C. L. Van Horn dated June 26, 1918,
$1,793.50, C. L. Rowen dated Oct. 4, 1918, $3,000, C. L.
Rowen dated Oct. 4, 1918, $1,000, B. E. Maybell dated Sept.
21, 1918, $1,192, Carl E. Philpott dated June 24, 1918, $150,
A. D. Hutchinson dated June 24, 1918, $150, A. L. Gillespie
dated April 15, 1918, $57.85, A. L. Gillespie dated June 25,
1918, $150, Carl F. Rowen, $10. Of the above notes pay-
ments have been made on them as follows: On the C. L.
Van Horn note $200, on the B. E. Maybell note $699.50,
also there is about $1,500 recovery on the Rowen notes. I
have a claim for my share of loss under these notes against
the Case estate by virtue of a contract assuring me against
any loss.

"On October 1, 1918, Mr. Fred L. Case charged the follow-
ing notes to loss, which notes are registered for collection
in this bank as the property of the stockholders of record
Oct. 1, 1918; Vernon E. Chapman $25, Harry Barber $50,
Vernon E. Chapman $20, Roy Castell $110, Wm. Varley
$367.20, Ida Fetters $184, M. E. Devore $75, L. C. Piatt
$800. Of these I had nothing to do with, they being
charged out just prior to my taking charge.

"Of the notes which I have made or renewed and on which
there is a chance of loss are H. B. Thompson $135.60,
chattel mortgage on four milch cows, no loss if we can
locate these cows, C. L. Rowen $325, C. M. on 12 yearling
heifers, G. T. Rowen $977.50, C. M. on 8 horses and 8

Kelly v. Wehn.

cattle; are selling the Rowen stuff within a few days, will not pay out by about $200.

"In my opinion the rest of the paper of the Angora State Bank is good.

"In getting at the actual value of the stock of this bank, the accrued interest on all notes was figured to Sept. 11 and amounted to $1,669.31.   The interest owing on the time certificates of deposit amounts to $151.22, making a net uncollected profit of $1,518.09, which amount added to the net profit as shown by statement attached makes a value of $141.24 per share less the uncharged loss as above set forth.   There is no unpaid expense or other claim that I know of.

"It has lately come to my knowledge that some of the parties interested in the Angora State Bank are dissatisfied and inclined to cause someone trouble.   In connection therewith would like to say that I took over this bank when it was insolvent and on the rocks, through mismanagement and neglect of those interested; by the liberal use of private funds and careful nursing and work I believe that I have stood it on its own feet and made a real bank out of it, without one bit of help or assistance of any one interested therein excepting L. D. Carnine.   I have transferred my stock to J. R. Kelly of Bancroft, Nebr., and placed in his hands my resignation as vice-president and director, and pass on with the hope that the Angora State Bank will prosper and grow.

"Yours truly,

"J. H. Wehn."

This letter and the other facts and circumstances brought out by the testimony, in connection with the fact that the defendant did not offer any proof as to the value of the assets in question and was unwilling to be interrogated thereon, was sufficient, we think, to show the defendant, according to the literal terms of the contract of sale, that said assets were worthless and uncollectible. In other words, we take the view that the undisputed evidence was such that plaintiff was entitled to recover all that the district

Kelly v. Wehn.

court awarded him by its direction. Where different minds can arrive at only one conclusion from undisputed facts, reasoning honestly and rationally, the court may direct a verdict consistent with that conclusion. *Knapp v. Jones,* 50 Neb. 490; *Shiverick & Co. v. Gunning Co.,* 58 Neb. 29; *Rogers & Bro. v. Marriott,* 59 Neb. 759.

Defendant strongly contends that the rule of *caveat emptor* applies to a sale of corporate stock, and that, hence, as a general rule, a seller of such stock does not warrant its qualities or value. But this rule can have no application in the case at bar, because in connection with the sale of capital stock of a concern an express warranty may be made as to the value of its assets. This was decided in *King v. Day,* 104 Neb. 353.

The defendant also argues that, in order to show him that the notes and accounts were worthless and uncollectible, it was necessary for the plaintiff to reduce the same to judgment, and produce an unsatisfied execution against the makers. Considering that said notes were long past due before the stock was sold to the plaintiff, and considering also what the defendant himself did with respect to the same and the estimate placed by him upon them in the above quoted letter, and considering further the other testimony referred to, it is quite obvious that the placing of these notes in judgment would have been futile. When it is clear that judgment and execution would be worthless, it is not necessary for the plaintiff in a case like this to reduce warranted or guaranteed claims to judgment. In addition to this, it must be true that it was not within the contemplation of the defendant in making the contract of sale that this should be done. For the time to elapse, a period of 30 or 35 days, would not be sufficient to enable plaintiff to place all of these notes in judgment.

The judgment appears to have been right, unless indeed a larger one might have been properly directed by the trial judge, and it is therefore approved by this court and

AFFIRMED.