KATE MORGAN, APPELLEE, V. UNITED BENEFIT LIFE INSURANCE COMPANY, APPELLANT.

FILED MARCH 31, 1932.   No. 28067.

*Cleary, Horan & Skutt* and *W. G. Kieck,* for appellant.

*D. O. Dwyer* and *W. L. Dwyer, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and WRIGHT, District Judge.

WRIGHT, District Judge.

This action was brought by Kate Morgan, plaintiff, against United Benefit Life Insurance Company, defendant, for the amount claimed to be due on a life insurance policy issued by defendant to Gertrude Morgan, in which the plaintiff was named as beneficiary. The allegations of the petition as to the issuance of the policy, death of the assured on August 10, 1930, and refusal by defendant to pay, were admitted, but the defendant alleged that the policy had lapsed because of nonpayment of the premium due June 5, 1930, and was therefore null and void at the time of the assured's death. The plaintiff, by way of reply alleged that at the time of taking out the policy

in suit the insured, Gertrude Morgan, was acting as agent for the defendant in Plattsmouth, Nebraska, and vicinity; that, as an inducement to her to take out the policy, the defendant's representative, F. T. Bochemuehl, agreed with the insured that the commissions earned on policies that she and said Bochemuehl sold together at Plattsmouth and vicinity would be hers and would be applied to the payment of the premium on her policy; that during the first two years of the policy said commissions were credited on the premium of the same, and whenever the insured was behind in her premiums, she was permitted to make up, either by payment or by application of commissions; and that the defendant waived the strict performance of the conditions in said policy regarding the payment of premiums in advance, and by so doing is now estopped to deny that said policy was in full force and effect at the time of the death of the insured on account of her failure to pay said premiums at the expiration of the 31 days' grace. Plaintiff further alleged that at the time of the death of the insured there were some commissions due to the insured, the exact amount of which she was unable to state, but that it was the duty of the defendant to notify the insured of any balance due on the premium so that she could pay such difference in accordance with the previous method of handling the premiums between the parties.

The jury returned a verdict for the plaintiff assessing the amount of her recovery at the face of the policy, together with interest. Judgment was entered upon this verdict, from which defendant has appealed.

The defendant, at the close of all the testimony, orally and later by written request duly filed, moved for an instructed verdict in its favor. The overruling of this motion and the refusal of the requested instruction are each assigned as error. Each assignment presents for consideration the sufficiency of the evidence to sustain the verdict.

The evidence establishes that on June 5, 1928, the insured was acting as agent for the defendant, on which

date the policy in suit was issued to her. The consideration for the policy, so far as is necessary to consider in this case, was the payment in advance of an annual premium of $115.20 for one year's time ending on the 5th day of June, 1929, and the further payment of a like amount on the 5th day of June, 1929, and annually thereafter, during the continuance of the contract. The policy, which was introduced in evidence, contained a provision for a grace of thirty-one days for the payment of every premium or instalment thereof, after the first, during which time the policy would remain in force, and a provision that after the first policy year premiums could be paid in advance in semiannual or quarterly instalments; also, the further provision that "upon default in payment of any premium this policy shall be null and void and all premiums forfeited to the company," with certain exceptions which could not be invoked in this case since they applied only after premiums had been paid for three full years and were provisions for extended insurance according to reserves earned on the policy and held by the company.

It is admitted that the first premium and the second premium due June 5, 1929, were paid. The premium or any instalment of the premium due June 5, 1930, was not paid. The reply concedes a failure to pay this premium and asserts a waiver on the part of the defendant of its right to insist upon the prompt payment according to the terms of the policy.

It is, we believe, a general rule, at least it is the accepted rule of this court, that a provision in a life insurance policy providing that it should be null and void upon failure to pay premiums when due, is not illegal, and where there is default in payment of premiums and no act or circumstance constituting a waiver or estoppel on the part of the company preventing it from insisting upon a forfeiture the contract will be enforced as made. *Dressler v. Commonwealth Life Ins. Co.*, 105 Neb. 669; *Novak v. LaFayette Life Ins. Co.*, 106 Neb. 417; *Bogue v. New York Life Ins. Co.*, 103 Neb. 568.

In *Dressler v. Commonwealth Life Ins. Co., supra,* this court said: "While it is undoubtedly the rule in this state that forfeitures are looked upon with ill favor by the court, and that when an insurance contract is susceptible of two constructions, one of which will work a forfeiture and the other will not, the court will incline to adopt the construction which will prevent a forfeiture. Still, it is equally well established that, when there is no uncertainty as to the meaning of an insurance contract, and the same is legal and not against public policy, and when there is no situation presented which would create a waiver of its terms or work an estoppel, it will be enforced as made. * * * By plain and unmistakable terms the policy provided that the failure to pay the premium on the day appointed should work a forfeiture. The parties had the right to make such a contract; it is not illegal or against public policy; there is no situation suggested which could be regarded as a waiver of its time or to create an estoppel. Under such circumstances it is the plain duty of the courts to enforce the contract as made." And in support of its holding, the court cited *Rye v. New York Life Ins. Co.,* 88 Neb. 707, where it was said: "When there is no uncertainty as to the meaning of an insurance contract, and the same is legal and not against public policy, it will be enforced as made."

This brings us to a consideration of the plaintiff's claim that the defendant had waived its right to enforce the plain provisions of the contract as to payment of premiums. The plaintiff insists that the defendant had waived the forfeiture clause in the policy at its inception and could not therefore insist upon a strict performance as to the payment of the premium; and further insists that the plaintiff, in dealing with the insured, had led her to honestly believe that the forfeiture clause would not be strictly enforced, and that by reason of its conduct the defendant had estopped itself from declaring a forfeiture in this case. As to the contention that it was the agreement of the parties upon the issuance of the policy that the defendant should accept in payment of

the premiums the renewals due the insured on such business as she should write, we feel that the evidence is insufficient to support the claim. The written contract itself recites the unqualified agreement that payments should be made promptly at the company's office or to an authorized collecting agent.

It is hardly conceivable that an insurance company would undertake to issue its policy of insurance under an agreement on its part to look to future commissions which the insured might be able to earn, for the payment of premiums to be paid as a consideration for the risk taken; in other words, fasten upon itself and upon its policyholders a liability in return only for the prospect of premiums to be earned in the future. Such a practice would undermine the safety of the company and from a standpoint of public interest would hardly be countenanced by the authorities exercising control over life insurance business. Promptness of payment of premiums is essential to insurance companies and upon this is based all the calculations of such institutions. Unless such a rule is enforced the business would be thrown into utter confusion and the door to fraud on the other policyholders thrown open.

A careful reading of the entire record fails to disclose any evidence which would reasonably justify the conclusion that at the inception of the contract the defendant waived or intended to waive prompt payment of the premiums as they fell due under the terms of the contract or that the subsequent acts of the defendant were such as led the insured to believe that the provisions as to payment would be waived or that she was justified in so believing. The whole course of dealings between the parties as disclosed by the letters put in evidence which passed between them is conclusive proof that such was not the case. These letters established beyond a doubt that it was the intention of the insured that commissions to which she claimed to be entitled should be paid direct to her as they fell due, and not held by the company against premiums on her own policy as they accrued.

And further, that she knew and recognized that a failure on her part to pay would work a forfeiture of the policy in suit. At the time this policy was issued, the insured, Gertrude Morgan, was acting as agent for the defendant company. She, with the agent Bochemuehl, wrote four other policies in and around Plattsmouth, upon which she made a claim for a portion of the renewal premiums, which claims were by the defendant company conceded, except a matter of $8.68, which was still left indefinite as to whether it belonged to her or to Bochemuehl. The whole amount of these premiums claimed by her was insufficient to meet the amount of the premiums on her policy; and the record discloses that each of these policies upon which she claimed commissions on renewal premiums had lapsed before the time the defaulted payment due June 5, 1930, on her own policy had matured. The insured paid the first premium on her policy in 1928. Before the premium which fell due June 5, 1929, had matured, she made claim to certain commissions due her from renewals on these four policies, and finally she received credits amounting in all to $37.50, and by arrangement with the company she was also to receive a credit on the premium of her own policy amounting to $7.11.

On May 27, 1929, the defendant wrote the insured regarding her claims for commissions due, telling her that they then had on hand belonging to her $25; and on June 10 she replied to this letter stating that this amount was right, and making a claim of $8.68 as her portion due on the premium of one Warner, and claiming also a credit of $7.11 commission on her own premium which fell due June 5 and upon which she had 31 days' grace. She also asked as to allowance for commissions to fall due in the future, and estimated that the payment of $75 more, with the credits, would be sufficient to pay the premium on her own policy, falling due on the 5th of the following month, adding: "Want my policy continued." On June 15 the defendant replied to her letter of the 10th, telling her that she was not entitled to commissions in advance and it would be impossible to allow

her any commissions until the premiums were actually paid; also informing her that one more premium had been paid, upon which she had an allowance which would make it necessary for her to pay $100 and apply the premiums due in order to meet her premium on which the days of grace would expire July 5, 1929. On January 23, 1929, she had written regarding commissions, asking that the company let her know the amount, if any, she had due and that they remit to her as soon as possible. At that time she seemed to have no thought that the commissions were to be held against her premium. In a letter of May 20, 1929, regarding her premium, she wrote: "As to my policy, have 31 days' grace, so will await a settlement from him (Bochemuehl) before deciding whether to drop it completely or renew another year." On February 16 she wrote regarding her commissions, stating: "As to my check for commissions, am still looking for it—have not received any from Mr. Bochemuehl either. Send it, and any further commissions or communications to 2039 —29th St., San Diego, Cal. * * * Should appreciate the check very much." On July 1, 1929, she forwarded $100 to apply on her premium, the days of grace on which expired July 5. In this letter she states: "Am inclosing my check for $100 because I do not want the policy to lapse, but want credits due me sent as they come in henceforth, please."

The defendant, after applying credits due her for commissions and the $100 forwarded, still had in its hands $5.04 due on commissions to the insured, for which it sent its check, which was put in evidence. It seems clear that at the time of the payment due in 1929 neither party had any thought of waiving payment of the premium within the time provided for in the policy; and it is likewise clear that insured had no intention to permit any commissions due her to remain in the defendant's hands against accruing premiums on her policy. The premium for 1930 fell due June 5. September 28, 1929, she wrote: "Believe there must be some money due me. * * * Would appreciate getting my commissions at this time as I need

the money." Apparently at that time she had no thought of leaving the commissions there to apply on the next premium on her policy. June 3, 1930, two days before the premium for that year fell due, she wrote saying: "Am sorry to report to you that I am unable to carry my insurance policy C-9011 (the policy in suit) this year." And on the 26th day of the same month, during the period of grace, the defendant wrote her: "Just a word to remind you, Miss Morgan, the days of grace for payment of your life insurance premium on your policy No. C-9011 will be up July 5th and your remittance on either the quarterly or annual basis should be forwarded by that date for the protection of your interests. * * * We don't want you to lapse any more than you want to lose your insurance and to do anything within reason to assist you over your temporary period of financial difficulty is our sincere desire." She wrote her reply on the back of this letter and mailed it to the defendant, in which she said: "In reply to letter on reverse side of this page, wish to state that I am still out of work, and cannot even meet the quarterly payment at this time. The employment situation is no better, so there is no definite solution that I can see. Might suggest that you consult Bochemuehl to see if he has any suggestion to offer, if he is still working for you people." This seems to be the last correspondence between the parties relating to the matter. The premium was not paid and the policy was permitted to lapse. At that time the insured made no claim for any commissions due her, nor is there any evidence that the defendant owed her anything on that account.

The only attempt to show any amount due the insured from the company on commissions was the testimony of the plaintiff herself, wherein she testified that she called on the defendant "to see what commissions were due and to get them; to see what commissions were coming to Gertrude on her writing policies for them." She states that Mr. Adams, the official of the company with whom she dealt, sent for some files and said that he would look

the matter up and let her know later. The question was asked: "Did he mention any amount there that he thought might be due? A. There was something about a little over twenty-four dollars that he would let me know about;" and then she adds that she heard nothing further from Mr. Adams after that in regard to the matter. This evidence falls short of proof that there was any amount due, and, further, it was insufficient to meet the payment due on the policy, in any event.

The rule that, where a verdict is against the clear weight of evidence so that it cannot be sustained on any principle of right or justice, it is the duty of the court to set it aside has been so long recognized and is so well established in this state that it needs no citation of authorities to sustain it; and on the trial of the cause in the district court, where only one conclusion can be drawn from the evidence, the question becomes one of law, and the court should direct a verdict. *Brown v. Swift & Co.*, 91 Neb. 532; *Baker v. Swift & Co.*, 77 Neb. 749; *Kelly v. Wehn*, 111 Neb. 446; *Sindelar v. Hord Grain Co.*, 116 Neb. 776.

The premium due June 5, 1930, on the policy in suit was not paid, and at the time of the death of the insured had been in default for more than 31 days. There is no evidence from which the jury could fairly conclude that the defendant had waived its right to declare a forfeiture for nonpayment of this premium. The defendant's motion for an instructed verdict in its favor should have been sustained and the jury instructed accordingly. The verdict of the jury and the judgment entered thereon, being unsupported by the evidence, should be set aside and the cause dismissed. In view of the conclusions reached as to the insufficiency of the evidence to sustain the judgment, it becomes unnecessary to consider other errors assigned in the brief of appellant.

For the reasons herein given, the judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.