WALTER A. SCOTT, APPELLEE, V. NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

FILED MAY 1, 1935.  No. 28774.

*William Baird & Sons, Reginald Foster* and *George Hoague,* for appellant.

*Brogan, Ellick & Shoemaker, William A. Stewart, Jr.,* and *Robert B. Hamer, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

CHASE, District Judge.

This is an action founded upon two disability contracts attached to life insurance policies. The case was tried to a jury, resulting in a verdict for the plaintiff, and from an order overruling a motion for new trial the defendant brings the record to this court for review.

The case has been twice considered by this court on previous occasions, and opinions written in each instance. *Scott v. New England Mutual Life Ins. Co.,* 126 Neb. 514; *id.* 127 Neb. 724. Afterward a second rehearing was allowed, and it is again before us for decision.

The appellee, who was plaintiff below, alleges in his petition that on the 18th day of July, 1928, the appellant, who was the defendant below, issued two life insurance policies to appellee, each in the sum of $5,000; that attached to each policy was a disability contract in which the company agreed to pay to plaintiff, for a consideration of $7.50 additional premium, if the plaintiff subsequently became wholly and permanently disabled from disease or other cause, the sum of $50 a month. About the 1st of May, 1931, while the policies were in full force and effect, the appellee became wholly and permanently unable to engage in his usual and customary occupation, or any occupation or profession, or to perform any work whatsoever for compensation, because of a disease of his right testicle.

The appellant, in its answer, denied obligation and lia-

bility under the disability contracts, for the reason that the appellant was induced to enter into the same through fraud, false representations and warranties, and concealment of material facts concerning the condition of his health, in that he stated in the application for insurance that he never had any serious illness or disease; that no member of his family had been afflicted with tuberculosis.

The facts are substantially as follows: Prior to the issuance of the policies appellee was, and still is, a farmer engaged chiefly in agriculture as an occupation; that the appellant issued and delivered two policies of life insurance in the sum of $5,000 each, dated July 18, 1928; that attached to each of these policies was a physical disability agreement which provided that for a consideration of $7.50 additional, upon receipt of proof that the insured has become physically and mentally incapacitated so as to be wholly and permanently unable to engage in any occupation or profession, or perform any work whatsoever for compensation, gain or profit, occurring while the policy and agreement are in full force, the company will pay to the insured a monthly income of $50, and waive payment of premiums thereafter due upon the policy; that in the latter part of 1927, after consulting his local physician, plaintiff found he had some disease of the right testicle, whereupon he consulted Doctor Davis, a physician and surgeon in Omaha, who pronounced his trouble tuberculosis of the epididymis. The epididymis, according to medical lexicographers, is a prolonged cermiform greyish body lying along the superior margin of the testicle. In January, 1928, Doctor Davis performed a surgical operation upon the plaintiff and removed his right testicle. This operation was performed about six months before the issuance of the policies under which this plaintiff claims indemnity.

Several assignments of error are relied on for reversal. Some are so involved with others that it will not be necessary to discuss all in order to properly dispose of the case. One complaint is that the evidence is insufficient to sustain

the judgment. Since the case has been presented to this court twice previously, we have examined the record with unusual care. The disputed issues of fact which were presented to the jury under the pleadings and evidence may be epitomized in two statements: First, was appellant induced by the appellee to write each of these contracts by fraud, false representations and warranties, and concealment of material facts sufficient to avoid liability? Second, has the plaintiff suffered a disability of such a character as is contemplated by the contracts?

The evidence as to the first proposition is seriously in conflict. The appellee testifies that the answers to the questions in the application for insurance were written by the appellant's agent through whom he procured the insurance; that he did not know that the application contained such questions or answers, and that no question was ever asked him by the agent, and he made no answers to any of them.

The agent who took the application testified that he read every question to the appellee, and that the appellee answered the same and the agent recorded the answers of the appellee in the blank spaces following each question.

As to the matter of disability, the testimony shows that since 1932 the appellee, due to this disease of the testicles, has been unable to carry on the usual duties of a farmer; that he was unable to do heavy work about the farm, but did perform such labor as caring for and feeding a few head of live stock in connection with which he shoveled corn and pitched hay in such quantities as was necessary to feed the same; that he also worked at different kinds of employment at short intervals and received compensation therefor; that he played a few sets of tennis on several occasions in the summer of 1931. No witness appears to have been called on the part of appellant to dispute the plaintiff's testimony in this regard.

It will be observed that these disputed issues of fact were submitted to the jury, and the jury resolved both against the appellant. The effect of the jury's verdict is

that they did not believe appellee was guilty of fraud or concealment of material facts, or breach of warranty, in procuring the policies, and that he had suffered a permanent total disability within the meaning of such contract.

In reviewing a law action, this court does not try the case *de novo,* and will not concern itself with the question as to whether the jury reached the proper conclusion of fact, where no errors of law were committed in submitting the questions to them. However, there are some exceptions to this rule, such as where it appears that the verdict is clearly wrong; the result of passion or prejudice; or contrary to the physical facts. For an appellate court to hold that it has the legal authority to set aside the verdict of a jury in all cases where it might disagree with the conclusions of fact reached by such jury would have the indirect effect of abolishing the jury system, and thus deprive the citizen of a highly prized and constitutionally guaranteed right.

In the cases which we have examined where the courts hold that false representations and concealment of material facts avoid liability on insurance policies, the question arose because the trial court had sustained a peremptory instruction and directed a verdict for the defendant, holding the evidence was insufficient to support the plaintiff's theory. All those cases were affirmed on the theory that the fraud and misrepresentation were established so clearly that a verdict for the plaintiff could not be sustained. In this case the situation is distinctly different. As we have said before, the evidence as to fraud and misrepresentation is conflicting, and, being conflicting, the question was one for the jury. It will be remembered in this case that the appellee's evidence is to the effect that he did not write the answers and did not know that they were being written. From the facts the jury might have found either for the plaintiff or for the defendant and there would have been sufficient evidence to support such finding. Therefore, the jury's finding must be considered conclusive.

It is a well-established rule, and often applied by this court, that if the case is presented to the jury under proper instructions, a verdict based upon conflicting evidence, where there is sufficient evidence to support it, will not be disturbed on appeal unless it is clearly wrong. *Anderson v. Lotman*, 124 Neb. 795; *State v. Commercial Casualty Ins. Co.*, 125 Neb. 43; *Dworak v. Shire*, 126 Neb. 474; *Showers v. Jones Co.*, 126 Neb. 604.

The appellant complains that the trial court erred in permitting plaintiff to deny his statements as to his previous health which were in his signed application attached to the policies. The decisions are quite numerous to the effect that where applicant gives to the agent of the insurance company a correct answer in his application, and the agent writes it incorrectly, the company will be estopped to claim that such representation is false. *Home Fire Ins. Co. v. Fallon*, 45 Neb. 554; *German Ins. Co. v. Frederick*, 57 Neb. 538; *Roth v. Employers Fire Ins. Co.*, 123 Neb. 300.

*Morrissey v. Travelers Protective Ass'n*, 122 Neb. 329, is cited in support of the theory that this court laid down the contrary rule, but upon strict analysis that case can be easily distinguished from the instant one. In that case the evidence showed that the application was made out by the insured, who made a false answer as to his eyesight. In the application the insured was asked the question: "Is your eyesight impaired?" to which he wrote the answer "No." The evidence showed that at the time his eyesight was impaired, of which fact he was aware,.and the injury for which he complained was sustained because of his inability to see properly. We see no reason why any distinction should be made between a case where the agent of an insurance company takes it upon himself to answer the questions intended for the applicant and writes an incorrect answer therein, without the applicant having made any statement in connection therewith, and without his knowledge, and one where the applicant gave the correct answer, and the agent inserted an incorrect one.

If the question of whether the agent wrote into the application an answer different from that given him by the applicant is a question of fact for the jury to determine, then it must follow that, where no question is asked the applicant, but the agent assumes the responsibility of answering the question himself, and answers it falsely, is likewise a question of fact for the jury.

In the case of *Busboom v. Capital Fire Ins. Co.*, 111 Neb. 855, it was held that, where the question in the application for insurance was answered correctly by the applicant, but falsely inserted by the agent, and the applicant did not consent to or know of the misstatements, the insurance company was liable on the policy. It is true the above case involved a fire insurance policy, yet the defense was fraud and misrepresentation, the same as in the instant case. We are aware of no sound reason why we should differentiate between the two classes of insurance where the same defense is relied upon. In that case the court held: "The question, then, whether or not the plaintiff gave the information was one of fact for the jury, who found for the plaintiff." Also, "When the insured states the facts correctly to the company's agent, he is not bound to exercise vigilance thereafter to determine whether the agent is exercising care or good faith in his transactions on behalf of the company." The estoppel arises because the mistake or fraud was committed by the insurer's agent; the insured having acted in good faith, although, perhaps, somewhat negligently.

This complaint is not well taken. The appellant alleges fraud in order to avoid its liability under the contracts. In setting up fraud as a defense, certainly the appellee would have the right to show that no such fraud was committed. He seeks to show this, not by disputing the application that he signed, but by showing that he did not know what it contained. He made no contention that the answers to the questions in the application were incorrect; his position being, true or false, he was not responsible for them because he had no knowledge of their existence.

Should his conduct even amount to an inconsistency, such inconsistency was induced by the appellant in making the charge of fraud, and, being thus induced, it will not be permitted to complain of the result. There can be no doubt that the questions that appear in the application and the false answers thereto are material to this risk, and that the appellant would not have written the policies had it known the true condition of appellee's health, regardless of the circumstances under which they appear in this application.

Another objection is that the trial court erred in refusing to admit in evidence the medical examiner's report which contained questions and answers involving the previous health of the appellee. This report was not attached to or indorsed upon either of the policies of insurance, and was excluded by the trial court. These policies each contain the following:

"This policy and the application, a copy of which is indorsed hereon and made a part hereof, constitute the entire contract between the parties * * * and no such statement shall be used in defense to a claim under this policy, unless contained in the application, and unless a copy of such application shall be indorsed hereon or annexed hereto when issued."

Subdivision 2, sec. 44-604, Comp. St. 1929, requires that the policy contain "a provision that no statement made by the applicant for insurance, which statement is not incorporated in or indorsed on the policy issued to such applicant, shall void the policy or be used in evidence." The statute is clear and free from ambiguity. Its obvious object is to promote a uniformity in life insurance contracts. No statement, unless attached to the policy, can become competent evidence in a suit thereon or be used to avoid liability thereunder. The medical examiner's report, not meeting the requirements of the statute, was not admissible in evidence, and the trial court was correct in excluding the same.

Claim is also made that the trial court erred in giving

instruction No. 2. By this instruction the court, in defining the issues, gave to the jury what the defense was, and in so doing paraphrased the allegations of defendant's answer. It was substantially the same language embodied in this instruction that the defendant relied upon as a defense in the case. If such language were proper to plead a defense, we observe no impropriety when the court told the jury, in substance, what the defense was by making use of almost the exact language. This contention is without merit.

Appellant also complains that the evidence fails to show a disability contemplated by the policy agreements. There is no charge made that the instruction of the trial court telling the jury what condition of health would amount to a disability under the contracts is erroneous. Under the instruction of the court upon this point, which we must conclude correctly states the law, the evidence is sufficient to support the verdict.

Except for the isolated instance herein discussed, we find no place where the appellant attempts to challenge the correctness of the trial court's instructions; but it seems willing to content itself mainly by asking the court to reverse the findings of the jury under the disputed evidence and substitute an opposite conclusion. In view of what has been said heretofore, this we cannot do. The writer of this opinion, having approved the first opinion in this case, makes no attempt herein to avoid his share of the responsibility for so doing. The former opinions are withdrawn, the reversal set aside, and the judgment of the district court is

AFFIRMED.

PAINE, J., dissenting.

Two opinions have been heretofore adopted by a majority of the court in this case. The writer of this dissent respectfully dissents from this third opinion. The first is found in 126 Neb. 514, and the second in 127 Neb. 724. Each of these opinions reversed the judgment of the

trial court on the ground that untrue answers, if proved to be knowingly made by the insured, would avoid the contract.

What will be the effect of this third opinion just adopted? If this insured was 24 years of age at the time of trial in 1931, and if his expectancy was 39 years, as shown in the mortality table in our statute, and if he is to be paid $100 a month on this disability rider during his expectancy, it will amount to $46,800, during which 39 years, under a provision in the rider, he is also to be relieved of paying further premiums upon these two $5,000 policies, of $94.50 each per year, and also the premiums of $12.50 upon each rider, consisting of $7.50 for total disability and $5 for double indemnity in case of accidental death, making a total of $107 upon each policy, or $214 for 39 years, or $8,346, and pay upon his death at the end of his expectancy $10,000 more, or a grand total of $65,146 worth of benefits going to the insured under this third decision, without obligation on the part of the insured of paying another cent to the defendant company.

As set out in the second opinion in the case at bar (127 Neb. 724) the insured signed an application stating that he had never had a serious illness in his life, or been afflicted with tuberculosis, although prior thereto he had been unable to work at times with the swelling in his scrotum, which had been drained many times, and finally his left testicle had been removed, because it was tubercular, just 5 months and 20 days prior to signing such application and making such answers. The insured testifies that he never knew that these answers were written in his application, and denied that he had been told that his trouble was tuberculosis of the testicles. In other words, the insured wins a verdict on the theory that his own statements were true and honest, and that all other witnesses who disagree therewith are fabricating a story. The agent positively swears he asked the insured every question, and that the answers were written down in the application exactly as given him by the insured. The

doctor testifies that insured's testicle was tubercular, and he told him so. There is no fact or circumstance in the evidence or the exhibits introduced which reflects against the testimony of the agent or the doctors, but, on the other hand, everything strongly supports their evidence in every particular.

The medical examiner positively swears that he asked the insured each question and wrote down the answers which the insured gave him. Insured, on the other hand, says that none of the questions in the medical examiner's report were asked him, and none of the answers were written in by him, or with his knowledge or consent. For the insured to expect one to believe that he did not give the medical examiner the facts relating to the members of his family tree and their diseases and ages at death, as well as all the other answers therein, is placing a heavy burden on judgment and common sense.

A copy of this application, with appropriate answers filled in in more than 30 blank spaces, was attached to and became a part of each policy. Admitting, just for the sake of argument, that insured's testimony was true, and that the agent filled in all these answers, including those which were false, without the knowledge of insured, and that he signed his name with his eyes shut, yet the law places a burden upon the insured for fair dealing.

When he received these policies, with the application a part thereof, the United States circuit court of appeals said that retention of it constitutes an adoption of the representations made in the application. *Taylor v. American Liability Co.*, 48 Fed. (2d) 592. Also see *New York Life Ins. Co. v. Goerlich*, 11 Fed. (2d) 838.

In a case where a son, Louis, had secured life insurance upon his illiterate father, Jacob, by false representations in the application as to his age, his health, and concealed his rejection by other companies, the Michigan court said: "It was Jacob's duty to know that the representations therein contained, and which constituted the inducement for the issuance of the policy, were true, and his silence

during the life of the policy is persuasive proof of a fraudulent intent." *Metropolitan Life Ins. Co. v. Freedman,* 159 Mich. 114.

In *Mutual Life Ins. Co. v. Hilton-Green,* 241 U. S. 613, we find this statement of the law: "Material representations in an application for life insurance which are incorrect, if known to be untrue by the assured when made, and nothing else appearing, invalidate the policy issued by the insurer relying on such representations, without further proof of actual conscious design to defraud. * * *

"Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. * * * Considered with proper understanding of the law, there is no evidence to support a verdict against petitioner and the trial court should have directed one in its favor."

In *Morgan v. United Benefit Life Ins. Co.,* 123 Neb. 47, Judge Fred Wright used this language in the text: "The rule that, where a verdict is against the clear weight of evidence so that it cannot be sustained on any principle of right or justice, it is the duty of the court to set it aside has been so long recognized and is so well established in this state that it needs no citation of authorities to sustain it; and on the trial of the cause in the district court, where only one conclusion can be drawn from the evidence, the question becomes one of law, and the court should direct a verdict. *Brown v. Swift & Co.,* 91 Neb. 532; *Baker v. Swift & Co.,* 77 Neb. 749; *Kelly v. Wehn,* 111 Neb. 446; *Sindelar v. Hord Grain Co.,* 116 Neb. 776." And in paragraph 2 of the syllabus Judge Wright said: "Where only one conclusion can be reasonably reached from the evidence, the question becomes one of law, and it is the duty of the trial court, upon

request to that effect, to direct a verdict accordingly." See, also, *Nelson v. Nelson,* 95 Neb. 523; *Lee v. Hildebrand,* 119 Neb. 717; *Lebs v. Mutual Benefit Health & Accident Ass'n,* 124 Neb. 491.

In my humble judgment, this third opinion does violence to the facts and results in a miscarriage of justice.

CARTER, J., dissenting.

It is quite apparent that the questions appearing in the application for insurance and the false answers thereto are material to the risk. They call for statements of fact that could have been definitely answered. They are of such a nature that a false answer implies fraud and constitutes the answers as warranties as distinguished from representations. If true answers had been shown on the application, the insurance would not have been written. The false answers are such that if made by the insured they render the policies void.

At the time the policies were taken out by the insured, he was 21 years of age. He had attended school until he had completed one year in high school. He testified on the stand he knew that insurance policies were issued in part on the statements made by the insured as to the previous good health of the applicant. He vigorously denied in his examination in chief that he knew he was afflicted with tuberculosis of the testicles on the occasions he made application for and was examined for the insurance. In his rebuttal testimony, he finally admitted that he knew this fact many months before. He testified that he did not make the answers that show in the application, that they were written in without his knowledge and that he signed the statement without reading or examining the same. The agent who took the application testified that each question was asked and the answer correctly inserted in the application. The medical examiner stated that he asked each question of the insured and that the answer was correctly inserted in the medical report. The insured denies this. There are answers contained in the application, the truth of which is not

disputed, the information for the making of which the insured must have provided. Other physicians testified that they informed the insured of his tubercular condition before the date of the application. The application was short and could have been examined in a very few minutes to determine its correctness. Although the insured knew this information was to be used as a basis for the issuance of the policies, he says he paid no attention to the contents of the application before he signed it. It is a needless waste of space to repeat all of the evidence which to my mind clearly indicates an intent to defraud the insurance company. The majority opinion is based on the theory that the evidence is conflicting, the jury properly instructed, and the verdict of the jury therefore final.

In my opinion, the verdict of the jury is so clearly against the weight of the evidence that it should be set aside. That the insured intended from the very beginning to conceal material facts in order to obtain this insurance is to me very apparent from the record. Only one conclusion can reasonably be reached from this evidence, and that is a verdict for the defendant. The trial court should have directed a verdict for the defendant at the close of all the evidence.

To permit one interested witness to come into court and successfully dispute several reputable witnesses and the facts contained above his own signature will certainly open the door to many frauds of like nature in the future. No new principles of law need be invoked to warrant a reversal of this case. It has always been the law of this state that where a verdict is against the clear weight of evidence, so that it cannot be sustained on any principle of right and justice, it becomes the duty of the court to set it aside. It then becomes a matter of law for the court, and not a matter for the jury to consider along with possible sympathy, speculation or prejudice as appears to have been the case in the suit at bar. But for the opinion of the majority of the court, I would not

hesitate to say that any reasonable person would conclude, after reading the record, that the judgment of the trial court was clearly against the great weight of the evidence.