LIZZIE M. SMITH, ADMINISTRATRIX, APPELLEE, v. WIL-
LIAM COON, APPELLANT.

FILED SEPTEMBER 25, 1911.    No. 16,518.

1. **Negligence:** CONFLICTING EVIDENCE: DIRECTING VERDICT. In an action to recover damages for death by wrongful act, where the

Smith v. Coon.

evidence as to the negligence of the defendant and the contributory negligence of the deceased is conflicting, it is the duty of the trial court to refuse to direct a verdict for the defendant.

2. Highways: OPERATION OF AUTOMOBILE: CARE REQUIRED. The driver of an automobile when approaching a street crossing in the main business part of a city, at a time when the streets are occupied by other vehicles and pedestrians, should have his automobile under control, should keep a sharp lookout, and should manage his car as to its rate of speed and otherwise with due regard to the safety of others, and should stop if necessary to avoid injuring any one who for any cause is found to be in a place of danger.

3. Negligence: CONTRIBUTORY NEGLIGENCE. One who becomes frightened and bewildered at the near aproach of an automobile while crossing a public street, and for that reason fails to avoid a collision, is not as a matter of law guilty of contributory negligence.

4. Venue: CHANGE OF VENUE: DISCRETION OF COURT. In passing on a motion for a change of venue the district court is vested with a sound legal discretion, and his ruling thereon will not be disturbed unless it appears that he has been guilty of an abuse of such discretion.

5. Damages. Evidence examined, and found sufficient to sustain the verdict, and that the amount thereof is not excessive.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*William Sykes, Carlton C. Marlay* and *Lionel C. Burr,* for appellant.

*C. O. Whedon* and *Morning & Ledwith, contra.*

BARNES, J.

Action to recover damages for death by wrongful act. The plaintiff had the verdict and judgment, and the defendant has appealed.

It appears that the defendant was driving his automobile on Twelfth street, in the city of Lincoln, on the 29th day of April, 1908, and, while going north over the crossing where that street intersects with O street, his

car struck and killed one Nellie Smith. The plaintiff was appointed administratrix of the estate of the decedent, and brought this action to recover damages sustained by her next of kin by reason of her death. On the hearing of this appeal there was some criticism of the allegations of plaintiff's petition, but we are satisfied from an examination of the record that the averments of negligence, which are somewhat general in their nature, are broad enough to sustain the verdict and judgment of which the defendant complains.

Defendant's first assignment of error is that the trial court erred in not sustaining his motion to instruct the jury to return a verdict in his favor, and in giving instructions numbered 12, 13 and 14. If we were to view this assignment in a technical sense, it could be disposed of under the rule that, where errors are assigned in a group, if any of the matters complained of are correct, the whole assignment must fail. We have concluded, however, to treat them together as a single assignment, and in the order presented in defendant's brief. It will be observed that at the very outset this assignment raises the question of the sufficiency of the evidence to sustain the verdict, for, if the evidence is insufficient, then it was error to overrule the defendant's request to direct a verdict in his favor.

It appears, without dispute, that the deceased and her sister Lizzie were at the store of Miller & Paine, situated on the corner of O and Thirteenth streets, in the city of Lincoln, at about half past 12 o'clock on the day when the accident occurred; that they were both employed by the Griswold Seed Company at its establishment on the corner of Tenth and N streets, and were on their way to their place of employment when the deceased was killed; that together they proceeded west along the south side of O street; that, when they reached a point on the Twelfth street crossing about half way between the curb line and the east rail of the Citizens Street Railway track, they saw the defendant's automobile approaching

them from the south at a distance of about 75 feet; that the speed of the approaching car frightened and bewildered them; that they hesitated and stepped back and forth in an effort to determine which way the automobile would turn in order to pass them; that as the car came on they failed to avoid it, and the deceased was struck upon her left side and thrown violently to the pavement, sustaining injuries of which she died within half an hour; that the crossing where the accident occurred is situated in the main business part of the city, and is at all times, and especially at the noon hour, congested by passing vehicles and by pedestrians on their way to and from luncheon; that this was the condition at the time in question, and therefore the killing was witnessed by a large number of persons who have testified for and against the defendant. The plaintiff, who was with the deceased at the time when she was struck by the defendant's car, locates their position as just west of the center of the space between the east rail of the street car track and the curbing when they discovered the approaching car. She testified that the car was north of the alley and just south of the crossing over which they were passing, and was coming directly towards them at such an excessive rate of speed as to frighten and bewilder them; that they hesitated and moved slightly east and west in an attempt to determine which side of them the defendant would pass, and before they could get out of the way the car, without slacking its speed, struck her sister and lifted her up and threw her some distance; that her head struck the pavement, and thus were inflicted the injuries of which she immediately died; that when her sister was struck they were facing towards the car, the deceased being east of the plaintiff, and that the car grazed plaintiff as it passed; that she heard no warning, and her attention was called to the approaching automobile by reason of its excessive speed.

One Hall, who at that time was crossing O street diagonally from the corner of the Burr block to the corner

of the Funke building, stated, in substance, that he saw the deceased and her sister on the crossing; that he also saw the car approaching them, and ran to the west side of the car tracks in order to reach what seemed to him a place of safety; that the deceased and her sister were in a direct line between him and the approaching car when he first discovered it, and that the car was coming directly towards them at a speed of at least 15 miles an hour, and was about 75 feet distant from them when he saw the deceased and her sister bewildered and hesitating upon the crossing in an apparent effort to avoid being struck by it; that he heard the thud of the car when it hit the deceased, and the noise made by her head when it struck the pavement; that he heard no gong or horn or warning of any kind; that the car, after striking the deceased, turned slightly to the right, ran about 75 feet to the northeast, and was stopped upon or just north of the street car track upon O street; that the defendant backed the car towards the south curb of that street, and that he heard him say, "She saw me coming. Why didn't she get out of the road?"

A Mrs. Crosse saw the accident. She testified that the car was south of the alley, going very fast, when she first discovered it; that she saw the deceased and her sister upon the crossing; that the car came on without any apparent slacking of its speed; that she heard a scream and thud when it struck the deceased.

One Doctor Brown, at the time of the accident, was at or near the southwest corner of the Burr block on O street. He saw the car approaching from the south, and testified that it was north of the alley when he first discovered it; that it was going about 10 or 15 miles an hour; that he heard no warning; that he saw the two ladies, one of whom was killed; that the car was approaching them in a direct line, and they seemed bewildered and did not know which way to go to get out of the way; that the deceased was struck and thrown to the pavement, and that it was all over in an instant; that the car ran about 70 feet after it struck the deceased.

Ray Elliott testified, in substance, that he saw the machine going past his place of business, which is situated on the east side of Twelfth street and south of the alley running east and west through that block; that it was going twice as fast as automobiles usually go when passing his store. He estimated the speed at that point at about 20 miles an hour. That he heard no warning of any kind.

J. W. Johnson was on the west side of Twelfth street, between the alley and the O street crossing. He testified, in substance, that he saw the defendant's automobile pass; that it was going so fast towards the people on the crossing as to cause him to fear an accident; that he saw the woman struck; that the automobile ran partly across O street and stopped north of Young's cigar store; that he estimated the speed, when it passed, at about 12 miles an hour; that it did not seem to slacken speed; that he heard no alarm sounded.

A Mrs. Goetting saw the accident, and her testimony as to the existing conditions and speed was, in substance, the same as that given by Ray Elliott.

One Grover Archer saw the accident, and testified in substance that the automobile was going faster than they usually go. He estimated its speed at 15 miles an hour, which was not diminished as it approached O street, and that he heard no alarm sounded.

W. H. Carson was standing on the curb at the northwest corner of Rector's drug store, which is situated on the corner of Twelfth and O streets and on the east side of the Twelfth street crossing. He stated that he saw the defendant's machine north of the alley which is situated south of the drug store; that it was about 75 feet from the deceased at that time, and was going at least 15 miles an hour; that its speed was what attracted his attention to it; that he spoke to a companion, and just then some one cried "He has struck a girl." His testimony was corroborated by his companion.

A Mrs. Garvey was at or near the place where the ac-

cident occurred; she heard a scream, and turned around quickly; she testified that a lady was lying on the pavement, and the driver was trying to stop the machine; that the auto passed her and went to the front of the barber shop, which is situated under the Burr block.

A Mr. Turner, by his testimony, also corroborated the plaintiff and her other witnesses as to the description of the accident, the speed of the automobile, and other essential particulars.

It is unnecessary to further review the plaintiff's evidence. The defendant testified that he saw the deceased when his automobile struck her; says he was going from 8 to 10 miles an hour when he crossed N street, which is a block south of where the accident occurred; that the machine was coasting; that he had it under perfect control, and had his hands on the wheel for the purpose of steering it wherever he wanted to go; that he was going only about 3 or 4 miles an hour when he reached the Twelfth street crossing; that he went over the crossing in the center of the space between the street car tracks and the east curb; that he saw the deceased and her sister when they started to cross the street about the time he crossed the alley; that he did not see them after he saw them crossing in front of his machine until he was within about two feet of the deceased, and at that time she was trying to get in front of his machine; that she ran against the machine and was knocked down. He also testified that at the rate of speed at which he was going he could have stopped the machine in from 6 to 10 feet.

Professor Richardson of the state university testified that he saw the accident, but was unable to fix the rate of speed; thought the machine was not going over 5 to 8 miles an hour. The defendant also succeeded in getting some testimony into the record to the effect that, in the opinion of the witnesses, if the deceased and the plaintiff had kept right along on their way towards the west side of Twelfth street, they would not have been struck; and, if they had turned back and gone to Rector's drug store

corner, the deceased would not have been killed. This testimony, while incompetent, was no doubt considered by the jury.

It thus appears that the evidence was conflicting, and therefore the question of the defendant's negligence was peculiarly one for the determination of a jury. It is quite probable, however, that the jury did not consider the defendant's testimony either convincing or persuasive. As a matter of law the deceased and the defendant were possessed of equal rights to the use of the crossing at the time the accident occurred, and if the deceased and her sister became frightened by reason of the negligent and excessive rate of speed at which the defendant was approaching them, and were thus rendered unable to get out of his way and avoid the accident, then it was his duty to stop his machine and thus avoid injuring them. *Simeone v. Lindsay,* 6 Pennewill (Del.) 224, 65 Atl. 778. To avoid liability defendant claimed that he did not see the deceased until she attempted to get in front of his car, but the jury must have concluded that it would not do for him to say that he did not see her, for the testimony is conclusive that from the time he crossed the alley until the deceased was struck she was directly in front of his machine, and he cannot avoid liability by saying that he did not see her. It was his duty to see her, and while driving his machine over a street crossing like the one in question, which was congested by the traveling public, to so approach it as to avoid injury to any one, and this is the meaning of that part of section 6248, Ann. St. 1909, which provides that the driver of an automobile, "upon approaching a crossing of intersecting public highways, or a bridge, or a sharp curve, or a steep descent, and also in traveling such crossings, bridges, curves, or descent, a person operating a motor vehicle shall have it under control and operated at a rate of speed less than heretofore specified, and in no event greater than is reasonable and proper, having regard to the traffic then on such highways and the safety of the public." It is quite apparent

that the defendant in this case failed to comply with the plain provisions of the statute above quoted, and we are therefore of opinion that the evidence in this case was sufficient to establish actionable negligence on his part, which was the proximate cause of the injury complained of, and the district court did not err in refusing to direct the jury to return a verdict in his favor.

Considering that part of this assignment which attacks instructions numbered 12, 13 and 14, it may be said that, if any one of the instructions complained of was correct, the assignment must be disregarded. However, we find, upon an examination of those instructions, that they are without error. They relate to the question of the defendant's negligence and the contributory negligence of the deceased, and, it appears that those questions were fairly submitted to the jury.

It is strenuously insisted, however, that the deceased was guilty of such contributory negligence as precludes a recovery in this case. The evidence discloses that when the accident occurred the plaintiff and her sister were on their way to their place of employment, and were attempting to pass over the Twelfth street crossing; that when they reached a point half way between the curb and the east rail of the street car track, and as they were proceeding westerly, they saw the defendant's car directly approaching them at a rate of speed so excessive as to frighten and bewilder them; that they hesitated in their attempt to determine whether they should proceed or retrace their steps in order to reach a place of safety; that, while so hesitating, the deceased was struck and killed by reason of the fact that the defendant did not materially slacken the speed of his car or turn sufficiently to the right or left to avoid the impending collision. Under such circumstances, the question of contributory negligence was properly submitted to the determination of the jury, and their verdict seems to be fully supported by the evidence and the adjudicated cases.

In *McFern v. Gardner*, 121 Mo. App. 1, which was an

action brought by the plaintiff for damages on account of the death of her husband caused by a collision with the defendant's automobile, it was said: "In such case, although the deceased turned to the left instead of to the right, he was not therefore guilty of negligence as a matter of law because he was confronted with a sudden danger in the near approach of the automobile and could not in the emergency be required to exercise the best judgment."

In *Navailles v. Dielmann*, 124 La. 421, the court said: "The act of a pedestrian in running in front of an automobile as a result of terror, caused by discovering the automobile near him, is not voluntary, and it is not negligence." In that case it was held that "where a pedestrian, because of terror, ran in front of an automobile, and the operator saw the danger to the pedestrian in time to avoid the accident by stopping, but he failed to do so, and ran over the pedestrian, the operator was liable under the last chance doctrine."

Berry, Law of Automobiles, in sec. 163, under the heading of "Mutual Rights and Duties," says: "One has the right to assume that others will exercise care and caution to avoid injuring him, but there is imposed upon him a corresponding duty to use due care for the safety of others. Thus, one in charge of an automobile is bound to exercise care commensurate with the risk of injuries to others. It is his duty to keep a vigilant watch ahead for vehicles and pedestrians, and on the first appearance of danger to take proper steps to avert it."

In *Benoit v. Miller*, 67 Atl. (R. I.) 87, the facts were that an automobile was moving southerly on a street 72 feet away from where a pedestrian had started easterly and across the same street, and, when beyond the middle of the street, the pedestrian stopped and looked backwards towards the sidewalk and was immediately struck by a lamp on the automobile, and it was held that he had reached a point where he had a right to suppose the

53

automobile would avoid him, and consequently was not guilty of contributory negligence.

From the foregoing, we are of opinion that the evidence in this case was sufficient to warrant the jury in finding that the deceased was not guilty of contributory negligence.

We think the foregoing sufficiently answers all of the defendant's assignments of error, excepting his contention that the verdict of which he complains was excessive.

It appears from the Carlisle table of expectancy, which was introduced in evidence, that at the time the deceased was killed she had a life expectancy of 25 years; that she was earning $60 a month, with every prospect of continuous employment; that she spent about $100 a year upon her clothing and personal expenses, and the remainder of her wage, amounting to $680 a year, was turned over to her mother for the support of herself and family; that at that time the life expectancy of her mother, who was her next of kin, was between 11 and 12 years. Deducting from the total prospective earnings of the deceased for that period her personal expenses, her board at $3.50 a week, and her car fare of $36 a year, and we have a net balance of more than $5,000, which she would have contributed to her mother's support during the remaining period of her life. It follows that the verdict, which was for $4,500, cannot be said to be excessive.

It is also urged that the district court erred in refusing to grant defendant a change of venue on account of the alleged bias and prejudice of the inhabitants of the county of Lancaster against drivers of automobiles. It appears that this question was submitted to the trial court upon affidavit evidence, and the motion for a change of venue was thereupon denied. It has been frequently held, where this question has been fairly submitted to and determined by the trial court, that, unless it clearly appears that there has been an abuse of discretion in refusing to grant a change of venue, the ruling of that court will not be disturbed. From a careful examination of the

record in this case, we are of opinion that the order of the district court in refusing to grant a change of venue was the proper one.

Finally, it appears that the defendant had a fair and impartial trial; that his contentions were fairly considered, and his matters of defense were submitted to the jury under proper instructions; that the evidence is amply sufficient to sustain the verdict; and the judgment of the district court is therefore

AFFIRMED.

SEDGWICK, J., not sitting.