RAY J. VARNUM, APPELLEE, V. UNION PACIFIC RAILROAD
COMPANY ET AL., APPELLANTS.

FILED JUNE 24, 1924.   No. 22785.

Evidence examined, and *held* insufficient to sustain the verdict.

APPEAL from the district court for Dodge county: FRED-
ERICK W. BUTTON, JUDGE. *Reversed.*

C. A. *Magaw, Thomas W. Bockes* and *Douglas F. Smith,*
for appellants.

*Abbott, Rohn, Robins & Dunlap,* contra.

Heard before MORRISSEY, C. J., LETTON and DAY, JJ.,
BLACKLEDGE and REDICK, District Judges.

REDICK, District Judge.

This is an action by plaintiff, Varnum, against the Union
Pacific Railroad Company to recover damages to plaintiff
and his automobile in the sum of $25,000 claimed to have
been sustained by reason of negligence of the defendant
resulting in a collision between an automobile driven by
plaintiff and a train of defendant at a country crossing.
Defendant's engineer in charge of the train is joined as
defendant. The trial to a jury resulted in a verdict in favor

of the engineer, but against the railroad company in the sum of $1,250. The grounds of negligence charged are the failure of the engineer to give any warning of the approach of the train to the crossing by sounding a whistle or ringing a bell, and the existence upon the right of way of willows and weeds which obstructed the view of plaintiff as he approached the crossing, so that he was unable to see the train until he was so close to the rails that he could not stop in time to avoid the collision. The separate answers of the defendants consisted of denials of allegations of negligence in the petition, and pleas of contributory negligence on the part of the plaintiff. The defendant appeals, assigning a number of errors, only one of which we deem it necessary to consider, namely, that the verdict is not supported by sufficient evidence and the district court erred in overruling defendant's motion for a directed verdict.

The verdict of the jury in favor of the engineer is a finding against the plaintiff as to all charges of negligence relating to the management of the train, and, therefore, we are concerned only with the charge that the right of way was permitted to be covered with weeds and trees to such an extent as to obscure the view of plaintiff on the highway of the approaching train; and the existence of trees may be eliminated because the testimony of all the witnesses shows that there were no trees within 40 feet of the railroad track, or any other obstructions within that distance, except weeds. It is shown without dispute that the situation regarding permanent factors at and near the crossing was as follows: The Lincoln Highway, a paved road, and the double track of the defendant run parallel with each other in a northwesterly direction about 150 to 160 feet apart. A county road running north and south crosses the highway and the railroad, the east line of the road making an angle at the railroad track of about 65 degrees. On the east side of the road between the highway and the railroad was a cornfield extending to the right of way fence 50 feet north of the tracks and parallel with

them.   Ten feet south of the fence is a line of telegraph poles and a few scattering scrub willows.   The surface of the road within that 50 feet is about 2 feet lower than the roadbed of the railway, and about a foot lower than the general surface of the right of way between the railroad and the fence.   A slight incline begins about 8 or 10 feet north of the crossing where the road approaches it.   As plaintiff approached the crossing from the north, his view of the railroad track upon which the train with which he collided was approaching from the east was at the angle above stated of about 65 degrees, with the ever widening prospect which such an angle gives; that is, the crossing was not at right angles with the railroad, and plaintiff approaching from the north had the advantage of the divergence of the line of the railroad from a right angle.

Plaintiff testifies that he was driving a Ford touring car, and that he turned from the Lincoln Highway to the left on the county road, going south on the east side of the road in low gear at about six or seven miles an hour (at which rate he could stop in five or six feet), looking and listening for approaching trains in both directions, and before entering upon the crossing brought his car nearly to a stop, but did not discover the train until he was just about four feet from the north rail, when the train was right upon him.   The front end of the automobile struck about the center of the engine and was thrown about 40 feet into a ditch at the side of the track.   The plaintiff claims that no whistle was sounded and no bell rung, and that he was unable to see the train on account of the cornfield, the willows, the telegraph poles, and high weeds on the right of way.   We may dismiss all of these claims from consideration except the weeds, because the other so-called obstructions were at least 40 feet from the railroad track, and plaintiff traveling in the road, barring the weeds, when he reached a point 40 feet north of the track, could have seen the track or the roadbed for a distance of about half a mile, and a train upon the track a much greater distance.

It will thus be seen that the sole question for determina-

tion is whether the evidence regarding the weeds growing upon the right of way is sufficient to sustain the verdict. The accident was in broad daylight, and plaintiff was perfectly familiar with the crossing, having been over it many times for two months before, and in fact had crossed it earlier on the day of the accident. The plaintiff testified that the weeds were four to five feet high and extended to within six feet of the north rail. One witness that he called said they were two to four feet high, and another one fixed their height at three to four feet, the highest weeds four feet. Witnesss Phillips for the plaintiff fixed the height of the weeds at six to eight feet. All of these estimates, except that of the plaintiff, were made while the witnesses were sitting in automobiles or standing in the road, while the plaintiff went over into the weeds a day or two later and fixed their height at four or five feet, the higher figure representing scattered weeds throughout the space. This evidence, viewed in the light most favorable to the plaintiff, will not sustain a finding that the weeds in question exceeded four to five feet in height. The estimate of the witness Phillips must be rejected as entirely unreliable, in view of the evidence of the plaintiff and his other witnesses. He testified, however, that at a point 12 feet north of the crossing he could and did see a train approaching from the east 100 feet away, and it is not certain whether he was talking of weeds along the road or in the right of way. It is further shown that, while sitting in his automobile on the road, plaintiff's point of vision was five feet above the ground, and that the height of the railway engine was 17 feet above the rails; it is thus evident that the weeds growing in the right of way, conceding the right of way to be a foot higher than the surface of the road, were but one foot higher than plaintiff's head while sitting in his automobile, and this distance being modified by the fact that there were some 15 or 20 feet between plaintiff's position in the road and the east line of the county road, at which point the weeds on the right of way began, while the object which plaintiff was looking

for, the locomotive coming from the east, was on railroad tracks 2 feet above the surface of the ground covered with weeds, and extended 17 feet above the rails. Assuming the situation to have been as claimed by plaintiff, the physical facts would seem to us to conclusively demonstrate the incorrectness of plaintiff's claim that the approaching train was obscured by and could not be seen on account of the weeds on the right of way. Furthermore, the train was traveling 35 miles an hour, and plaintiff at 6 or 7. It follows, therefore, that when plaintiff was 50 feet from the crossing the train was 250 feet from it, and, if the same rate of speed was maintained, when plaintiff was 12 feet from the crossing the engine was 60 feet away and in plain sight past the corner of the weeds, if they had obstructed plaintiff's view prior to his arrival at that point. Phillips testified the train could be seen 100 feet from that point, and if plaintiff had looked, as he says he did 10 or 12 feet from the north rail, he could have seen the train in time to have stopped. A few days after the accident several kodak pictures were taken by plaintiff or some one with him in the vicinity of the crossing, evidently for the purpose of showing the situation regarding the weeds on the right of way. Some of these pictures were taken at the crossing, but the jury were not given the benefit of the information disclosed by those pictures, they not being introduced in evidence, nor their absence accounted for. Two pictures taken at or near the intersection of the Lincoln Highway with the county road were introduced, and a careful study of them leads to the conclusion that they were so taken at a point 150 to 175 feet north of the crossing for the purpose of emphasizing the height of the corn north of the right of way as obscuring the approach of trains, which fact is conceded, but they are of little, if any, value upon the question of the weeds which we are discussing. It is perfectly evident that, if it was desired to show the condition of the right of way as to weeds, the camera should have been placed at some point on the county road at the corner of the right of way fence, or between that point and

the railroad track, thereby placing the lens in about the position of the eyes of a traveler upon the road and demonstrating clearly and accurately what could be seen and what obstacles existed to prevent the traveler from observing the approach of trains. It seems that such pictures were taken, but, as above noted, were not produced for the inspection of the jury, furnishing a strong inference that they would show no such obstructions as the plaintiff is claiming.

We are not unmindful of the rule that a reviewing court is not permitted to weigh the evidence, that being the exclusive province of the jury, but where the statements of the witnesses are opposed to natural laws and conclusive inferences arising from the undisputed physical facts, there is no question of weight of evidence, and the latter must prevail.

We conclude that the verdict is not sustained by sufficient evidence, and that defendant's motion for a direction should have been sustained; judgment reversed, and cause remanded for further proceedings.

REVERSED.

Note—See Railroads, 33 Cyc. p. 1087.