ED BORCHERDING, APPELLEE, V. C. EDWIN EKLUND ET AL.,
APPELLANTS.
55 N. W. 2d 643

Filed November 21, 1952. No. 33195.

*Sidner, Lee & Gunderson, George E. Svoboda,* and *Shackelford, Spittler & Emmert,* for appellants.

*Spear* and *Lamme,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Ed Borcherding brought this action in the district court for Dodge County against C. Edwin Eklund and Theodore L. Wallingford for the purpose of recovering damages for injuries to his person and his car which resulted from an accident involving his and defendant Eklund's cars. The basis on which he claims the right to recover is that defendant Wallingford, while driving the Eklund car, operated it in a manner that was negligent and that such negligent operation was the proximate cause of the accident which resulted in his damages. A jury returned a verdict in favor of plaintiff. The trial court entered a judgment thereon. Defendants thereupon filed an alternative motion asking for either a new trial or judgment notwithstanding the verdict. This motion was overruled and defendants appealed therefrom.

Appellants contend there is not sufficient evidence in the record upon which to base a finding of negligence on their part and that either their motion for directed verdict or for a judgment notwithstanding the verdict should have been sustained.

In this respect the court's instruction No. 1 submitted

the following: "* * * that defendant Eklund's car operated by defendant Wallingford, who was the agent of defendant Eklund and drove with Eklund's consent, was driven northward upon Nye Avenue negligently, carelessly and recklessly, and charges particularly that defendant's car was driven at a high and dangerous rate of speed, greater than was reasonable and proper under the conditions, and in disregard of the safety of other vehicles; in failing to have defendant's car under proper control and in failing to keep a proper lookout for traffic."

In considering this assignment of error the following rules, approved in Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310, are applicable:

" 'If a motion for directed verdict made at the close of the evidence in a case should have been sustained for want of evidence to support a verdict in favor of the party against whom made, it is the duty of the court on motion for judgment notwithstanding the verdict timely made to sustain such motion to set aside the verdict and to render judgment pursuant to the motion for directed verdict.' Hamilton v. Omaha & C. B. St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139.

" 'In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom.' Smith v. Platte Valley Public Power and Irrigation Dist., 151 Neb. 49, 36 N. W. 2d 478."

Admittedly the accident happened on Saturday, April 7, 1951, about 5:15 p. m., in the intersection of Seventeenth Street and Nye Avenue in the city of Fremont, Nebraska. It happened when a 1949 Chevrolet Tudor sedan, owned by Eklund and being driven by his employee Wallingford, ran into a 1942 Chevrolet Tudor sedan owned by appellee. At the time of the accident appellee was driving his car, then occupied by himself

and his wife, east on Seventeenth Street. Appellant Wallingford, while in the performance of his duties as Eklund's employee, was at the same time driving the Eklund car north on Nye Avenue. The collision of the two cars occurred in the southeast quadrant of the intersection. The appellee's car, at the time it was hit, was just south and east of the center of the intersection. The Eklund car ran head-on into the center of the right side of appellee's car. As a result of being hit appellee's car slid sideways stopping in the northeast corner of the intersection with its left-rear wheel over the curb and the front of the car facing generally east but somewhat to the south. The Eklund car stopped about four feet east of the center of the intersection about on a line with the center of Seventeenth Street and facing generally to the east. Both cars remained upright. The right side of appellee's car was badly smashed, the front seat was broken loose from its track, and the left-rear wheel, which was of steel, was badly damaged.

Nye Avenue runs north and south. It has a brick surface extending from curb to curb, which is 36 feet. This brick surface covers the intersection and extends 7 feet 8 inches into Seventeenth Street, which runs east and west. Seventeenth Street has a cement surface from curb to curb which is a distance of 30 feet. Nye Avenue is a through street. There is a stop sign on Seventeenth Street 20.4 feet west of the west curb of Nye Avenue. The distance on Nye Avenue from the south curb of Seventeenth Street to the north curb of Sixteenth Street, which is the first east-west street to the south, is 430 feet. On approaching Nye Avenue from the west on Seventeenth Street the view to the right, or south, is unobstructed, while to the left, or north, there are bushes and shrubs which obstruct the view in that direction. These bushes and shrubs make it necessary to approach almost to the west curb of Nye Avenue in order to see traffic coming from the north.

Appellee, who was 62 years of age, testified that he

and his wife left their home that day to do some shopping; that they drove their car for that purpose; that they proceeded south on Colson Street, on which their home is located, to Seventeenth Street and then east on Seventeenth Street; that Colson Street is just one block west of Nye Avenue; that he was driving the car and was familiar with Seventeenth Street, having often driven thereon; that he knew there was a stop sign on Seventeenth Street just before it intersected Nye Avenue; that at the time it was drizzling, with occasional snow; that the streets were wet but not icy; that he was using his windshield wiper; that as he approached Nye Avenue and was about one-fourth of a block west of the intersection, he looked to the south and saw a car coming; that the car coming from the south was beyond Sixteenth Street and about two blocks away; that he then approached the stop sign and stopped; that he then again looked to the south and saw this car approaching just beyond Sixteenth Street; that he started up, putting his car in low, and went slowly forward because the bushes and shrubs blocked his view to the north; that when he could see to the north he looked and seeing no traffic again looked to the south; that as he again looked to the south he saw the car coming about a block away; that he continued into the intersection, driving in low, and watching ahead; that he next saw the car coming from the south just as it hit his car; that his car was in low and going between 10 and 15 miles an hour at the time of the accident; and that his car was just east and south of the center of the intersection when it was hit.

We think from these facts the jury could reasonably infer and find that the driver of the Eklund car was guilty of any one or all of the specifications of negligence submitted and therefore the court properly submitted them to the jury. It is true that the evidence of appellants presents quite another picture. However, which of the two versions of how the accident happened

is correct presents an issue of fact and not of law and therefore is a jury question.

As stated in Woracek v. Schuehart, 130 Neb. 260, 264 N. W. 670: "The jury could reasonably infer that the plaintiff stopped at the stop sign before entering the intersection, that the defendant was driving too fast and did not have his car under control because his car hit the right rear wheel of plaintiff's car, overturning it when she was almost across the intersection. Defendant could have seen plaintiff during the entire time she was passing almost the entire distance of the intersection. If he was not driving at an excessive rate of speed and had his car under control, he could have avoided hitting her, and if he did not see her, he must have been driving recklessly and without a due regard for the safety of others. The jury could infer from this evidence that the defendant was negligent and that his negligence was the proximate cause of the accident. An automobile driver should have his car under such control that upon entering an intersection he can avoid a collision with another car which is operated with due care. Thrapp v. Meyers, 114 Neb. 689, 209 N. W. 238; Smith v. Coon, 89 Neb. 776, 132 N. W. 535."

Appellants also contend appellee was guilty of contributory negligence sufficient to bar his recovery as a matter of law. We have already set forth appellee's testimony of what he did on approaching and entering the intersection. The following principles are here applicable:

"The duties and obligations which attend a motorist when he approaches a stop sign erected pursuant to city ordinance are the same as those which attend when he approaches one erected pursuant to statute or statutory rules of the road." Dale v. Omaha & C. B. St. Ry. Co., 154 Neb. 434, 48 N. W. 2d 380.

"A driver of a motor vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions, and permit all vehicles to pass which

are at such a distance and traveling at such a speed that it would be imprudent of him to proceed into the intersection." Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501.

As stated in 5 Am. Jur., Automobiles, § 303, p. 668: "* * * it is his duty to look both to right and left; and if a vehicle is approaching on the main or arterial highway, it is his duty to wait until such vehicle has passed, unless a prudent person would have reasonable ground to believe that such other vehicle proceeding at a lawful speed is so far distant from the intersection that he could safely cross in advance thereof."

"A driver of a vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be obviously dangerous for him to proceed across the intersection. See Schrage v. Miller, 123 Neb. 266, 242 N. W. 649. Before one entering such an intersection protected by a stop sign can be held negligent, no statutory violations being shown, it must appear that the approaching car was at a point which, after considering its speed, indicated that it was within the limit of danger and that to proceed would be imprudent." Meyer v. Hartford Bros. Gravel Co., 144 Neb. 808, 14 N. W. 2d 660.

"On authority and reason an ordinance designating a street as an arterial highway and requiring drivers of motor vehicles to stop before entering it from intersecting thoroughfares does not grant an exclusive privilege to drivers on the favored artery or require those crossing it to do so at their peril regardless of the duty of motorists on all public highways to obey traffic regulations and exercise due care to protect the rights of others. Where a motorist on a nonfavored street stops at an intersecting arterial highway when the intersection is clear of traffic, looks to the right and left for approaching vehicles, acting as a reasonably prudent person in the exercise of due care would act in the belief that he has

time and opportunity to safely cross, he is not liable for negligence merely because he attempts to do so." McCulley v. Anderson, 119 Neb. 105, 227 N. W. 321.

It is true that appellants' witnesses testified that appellee did not stop before entering the intersection, and proceeded without any precaution and in such a manner that the driver of the Eklund car was not able to avoid hitting him. Where the driver of a car approaching a through street or highway stops and looks and sees an approaching vehicle on the favored street or highway but erroneously judges its speed or distance or for some other reason assumes he can proceed with safety and not have a collision, the question of whether or not his conduct in doing so makes him guilty of contributory negligence is usually one for the jury. See Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596. Under the evidence disclosed by the record we think the issue of contributory negligence is one of fact and not of law and was properly submitted to the jury.

Appellants further contend the evidence of appellee is so opposed to the unquestioned laws of nature, is so clearly in conflict with scientific principles as established by the laws of physics and mechanics, and is so opposed to undisputed physical facts that it is unworthy of belief. Appellants cite cases where we have so held. See, Heink v. Lewis, 89 Neb. 705, 131 N. W. 1051; Dodds v. Omaha & C. B. St. Ry. Co., 104 Neb. 692, 178 N. W. 258; Varnum v. Union P. R. R. Co., 112 Neb. 340, 199 N. W. 503.

We said in Scott v. New England Mutual Life Ins. Co., 128 Neb. 867, 260 N. W. 377: "In reviewing a law action, this court does not try the case de novo, and will not concern itself with the question as to whether the jury reached the proper conclusion of fact, where no errors of law were committed in submitting the questions to them. However, there are some exceptions to this rule, such as where it appears that the verdict is clearly wrong; the result of passion or prejudice; or

contrary to the physical facts. For an appellate court to hold that it has the legal authority to set aside the verdict of a jury in all cases where it might disagree with the conclusions of fact reached by such jury would have the indirect effect of abolishing the jury system, and thus deprive the citizen of a highly prized and constitutionally guaranteed right."

We do not think the factual situation here is one to which such principles are applicable and therefore find this contention to be without merit.

The appellants contend the trial court failed to properly instruct the jury on the subject of damages with reference to what items it could consider in measuring the amount thereof. There is evidence in the record to the effect that appellee's spinal cord was injured by the accident; that the injury to his spinal cord immediately temporarily paralyzed his arms, hands, left leg, groin, and kidneys; that he suffered very severe pain therefrom; that he was in the hospital for two weeks; that while in the hospital he suffered intense pain; that while the pain was reduced with the passing of time that he has continued to suffer up to the time of trial, especially while wearing a brace; that he wore a brace from July 24 to October 25, 1951; and that he was suffering from various types of pain at the time of trial which would, with reasonable certainty, continue into the future. There is also evidence in the record that he had, prior to the accident, always been in good health; that at the time of the accident he was working regularly for the Park Department of the city of Fremont; that he had been regularly working 44 hours a week and receiving $1 an hour for his services; that since the accident the only work he has been able to do was to work on this job from June 4 to July 11, 1951; that he is 30 to 35 percent permanently disabled; that he is no longer able to do physical labor, which he has done all of his life; and that he is not qualified to do other work. In this regard the expectancy tables were introduced for a man

of his age. There is also evidence of doctor and hospital bills and the cost of repairing his car.

In an action of this type the burden is on the one seeking to recover to establish by a preponderance of the evidence that the other party is guilty of one or more of the alleged acts of negligence, that if found guilty thereof that such negligence was a proximate cause of the accident, and that damages were caused as a result together with the extent thereof. These are the issues and the court should properly instruct in regard thereto.

Instruction No. 3 given by the court properly placed the burden on appellee to establish, by a preponderance of the evidence, "The amount of damages."

The only other language in the instructions on the subject of damages is the following, also found in instruction No. 3: "If, however, you find plaintiff has proved all of said propositions, by a preponderance of the evidence, and further find that plaintiff was not guilty of negligence which contributed to plaintiff's injuries, then plaintiff will be entitled to recover such damage as he has shown, by a preponderance of the evidence, to have sustained."

By instruction No. 1 the court had advised the jury the appellee claimed: "* * * That as a direct and proximate result of such negligence defendant's car ran into the right side of plaintiff's car with such force and violence as to damage plaintiff's car requiring the repairs described in the evidence, and as a further direct and proximate result of said negligence plaintiff received such physical injuries as to become permanently disabled; that said injuries caused great pain to plaintiff and he will continue to suffer great pain therefrom, all said injuries being described in plaintiff's evidence. For his first cause of action plaintiff prays judgment in the sum of $25,000 for said personal injuries. For his second cause of action he prays for the sum of $412.75 covering medical and hospital expense and $380.95 for repairs to his car; * * *."

We have often said, and it needs no citation of authority, that it is the duty of the court to instruct the jury upon the issues presented by the pleadings and evidence whether requested to do so or not.

As to some of the injuries for which damages are sought the following principles apply:

"In an action for damages for personal injuries which are permanent and have impaired the earning capacity, damages for pecuniary loss by reason of decreased earning power are to be based on life expectancy immediately before the injury and for future mental and physical suffering on probable expectancy of life in plaintiff's injured condition." Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627.

"The only future pain and suffering which a jury is entitled to consider in the assessment of damages is such as the evidence shows with reasonable certainty will be experienced." Crecelius v. Gamble-Skogmo, Inc., *supra*.

"Damages for permanent injuries cannot be based upon mere speculation, probability, or uncertainty, but must be based upon competent evidence that permanent damages, clearly shown, are reasonably certain as a proximate result of the injury." Schwarting v. Ogram, 123 Neb. 76, 242 N. W. 273, 81 A. L. R. 769.

See, also, Burkamp v. Roberts Sanitary Dairy, 117 Neb. 60, 219 N. W. 805; Jensen v. Omaha & C. B. St. Ry. Co., 128 Neb. 21, 257 N. W. 257; Nelson v. Wiepen, 154 Neb. 458, 48 N. W. 2d 387.

In computing the damages for personal injuries resulting from loss of future earning capacity allowance should be made for the earning power of money and when the loss of future earnings are considered the jury should take into account the present value of the future earnings which it finds the claimant has, by reason of his injuries, been deprived, that is, the damage for future loss of earning power is the amount thereof reduced to its present worth.

"Damages for loss of future earnings or decreased earning capacity should be reduced to their present value, 'and only the present value thereof should be included in the verdict. The present value of future earnings should be computed on the basis of the plaintiff's age and expectancy of life." 15 Am. Jur., Damages, § 95, p. 505.

We said in Linch v. Hartford Fire Ins. Co., 138 Neb. 110, 292 N. W. 27, 129 A. L. R. 1063: "It is always the duty of the court to instruct the jury as to the proper basis upon which damages are to be estimated. The jury should be fully and fairly informed as to the various items or elements of damage which they should take into consideration in arriving at their verdict, otherwise the jury may be confused and misled."

In Nelson v. Wiepen, *supra,* we said the following principles are applicable:

" 'Where the pleadings and evidence sufficiently raise such issue, the court in a personal injury case should properly instruct the jury concerning damages for loss of time or earnings.' 25 C. J. S., Damages, § 185, p. 890.

" 'Where the issue is duly raised, the court may and should advise the jury that it may award damages for impaired earning capacity, by instruction in proper form and correctly stating applicable rules, * * *.' 25 C. J. S., Damages, § 185, p. 891. See, also, 15 Am. Jur., Damages, §§ 379, 380, p. 818."

See, also, Lund v. Holbrook, 153 Neb. 706, 46 N. W. 2d 130.

Our attention is called to Chambers v. Chicago, B. & Q. R. R. Co., 138 Neb. 490, 293 N. W. 338, wherein it was said: "Ordinarily, this rule (that it is the duty of the trial court to instruct on the issues of the case, whether requested to do so or not) applies to the issues of a case, and an element of the measure of damages is not an issue but a basis of recovery on the issues." (Insertion ours.) However, this statement is not specifically applicable

here because the trial court entirely failed to inform the jury as to just what items it could consider in arriving at the amount of its verdict let alone the basis for assessing the amount thereof. In view of our later holdings, we do not think our holding in Chambers v. Chicago, B. & Q. R. R. Co., *supra*, correctly reflects the true rule and insofar as it conflicts with the rule hereinafter stated the same is overruled.

A jury should be fully and fairly informed as to the various items of damages which it should take into consideration in arriving at its verdict. In this respect it is the duty of the trial court to instruct as to the proper basis upon which damages are to be assessed for each such item.

In this respect we think the instruction on damages, as given by the court, failed to provide any measure by which the jury could determine that issue and consequently it cannot be said that the court performed the duty imposed upon it of instructing the jury upon the issues presented by the pleadings and evidence.

Appellants state that by its instructions Nos. 8 and 9 the court endeavored to inform the jury of the duties of a driver approaching and crossing a through or arterial street or highway but that it failed to fully do so in accordance with our holdings. In that respect they tendered two instructions, numbered 5 and 7, which they claim fully and correctly set forth such duties. They contend the trial court erred in not giving their instructions or instructions of its own to like effect.

Instruction No. 8 given by the trial court advised the jury of the duties imposed upon the drivers of vehicles upon the public streets and highways by the ordinances of the city of Fremont and by the statutes of the State of Nebraska having particular reference to the situation at hand.

In regard to any violation of these duties the instruction advised the jury as follows: *"You are at liberty to take any violation of these laws, if any there be, into*

consideration, along with all the other evidence in the case in determining whether or not the party or the parties so violating the same are chargeable with negligence in and about the accident." (Italics supplied.)

The language italicized is criticized by appellants as not properly advising the jury in regard thereto. We have often said: "The violation of a safety regulation established by statute or ordinance is not negligence as a matter of law, but may be considered in connection with all of the other evidence in the case in deciding the issue of negligence." Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607. See, also, Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N. W. 2d 680; Mundy v. Davis, 154 Neb. 423, 48 N. W. 2d 394.

In this regard the jury should be advised that if it finds from the evidence that any of the parties violated any of the duties imposed upon them by these ordinances and statutes that the violation thereof is not, in and of itself, negligence as a matter of law but that such violation is only evidence of negligence which, together with all the other evidence in the case, it should consider in determining whether or not the parties, or any of them, have been guilty of negligence. See Mundy v. Davis, *supra.*

Appellants contend that instructions Nos. 8 and 9 given by the court do not sufficiently set forth the duties of a driver of a motor vehicle on approaching and entering the intersection of a through street as those duties have been defined by this court.

We have hereinbefore set forth the duties of such driver upon approaching a through street and the conditions under which, if he stops, he can proceed without being negligent by quoting from Simcho v. Omaha & C. B. St. Ry. Co., *supra;* 5 Am. Jur., Automobiles, § 303, p. 668; Meyer v. Hartford Bros. Gravel Co., *supra;* and McCulley v. Anderson, *supra.* Upon properly complying with the foregoing duties the driver, upon entering the intersection, does not have an absolute right-of-way

which permits him to proceed without looking but must continue to maintain a proper lookout for the safety of himself and others traveling upon the streets. See Dale v. Omaha & C. B. St. Ry. Co., *supra.*

In the instructions given these duties are not sufficiently set forth.

Appellants are critical of the court's instruction No. 16½, which is as follows: "You are finally instructed that when the term 'highway' is used in any of the foregoing instructions the same refers to street."

This instruction was apparently given to advise the jury that although the court's instructions, particularly Nos. 8 and 9, use both the words streets and highways, the language used applied to the situation involved. It could probably be more concisely stated but certainly it is not in any sense misleading.

In its instruction No. 15 the court defined "intersection" as: "The term 'intersection' includes the area embraced within the prolongation of the lateral boundary lines of two or more highways which join one another at an angle."

Section 39-741, R. R. S. 1943, defines "intersection" as follows: "The term 'intersection' includes the area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other."

Under the factual situation here we think the definition relating to "the lateral curb lines" is the one that should have been given.

In view of what we have herein said, it cannot be said that appellants had a fair trial. We therefore reverse the judgment of the lower court and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.