THOMAS W. SINGLES, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLANT, IMPLEADED WITH RAILWAY EXPRESS AGENCY, INC., A CORPORATION, APPELLEE.

112 N. W. 2d 752

Filed January 5, 1962.   No. 34983.

*Crossman, Barton & Norris,* for appellant.

*Wear, Boland, Mullin & Walsh, McCormack & McCormack,* and *A. Lee Bloomingdale,* for appellee Singles.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

(91)

CARTER, J.

This is an action for personal injuries sustained by the plaintiff as the result of the negligence of the Union Pacific Railroad Company, hereinafter referred to as the defendant. The Railway Express Agency, Inc., was made a party defendant solely to protect its right of subrogation for workmen's compensation payments made by it. The defendant admitted liability for the negligence of its employees. The only issue was the amount of damages to which plaintiff was entitled. The verdict of the jury was for $100,000. The defendant has appealed.

The evidence shows that on November 12, 1958, plaintiff was employed as night terminal agent by the Railway Express Agency, Inc., at the Union Pacific and Burlington depots in Omaha, Nebraska. He was then 66 year of age and in good health. He was earning a salary of $524.54 per month.

On the evening of November 12, 1958, defendant's switch crew spotted an express car at an unloading dock in the Omaha yards. A four-wheel platform truck was backed up to the door of the express car. As plaintiff was stepping from the platform truck into the express car, defendant's switch crew negligently pushed another car into the express car, knocking plaintiff down and causing plaintiff's foot to become caught between the platform truck and the express car. Plaintiff's right foot was so badly crushed that amputation was necessary.

The record shows that it took approximately 40 minutes to release plaintiff from between the platform truck and the express car. He was taken to a hospital where his right foot was amputated. During all of this time plaintiff was suffering extreme pain, although he was in a state of shock. On November 24, 1958, it was found necessary to amputate plaintiff's leg at a point one-third the distance below the knee. He was released from the hospital on December 10, 1958. In

April or May 1959, plaintiff was fitted with an artificial leg with which he had much difficulty. On November 24, 1959, plaintiff was again hospitalized for a traumatic neuroma, an enlargement of the nerve end resulting from scarring following the second amputation. Plaintiff was released from the hospital on December 1, 1959. A month or two following, plaintiff was fitted with a new artificial leg. He was able to move about with the aid of a cane until the time of trial. There is evidence that plaintiff has suffered pain to the time of trial. He testified to a phantom limb syndrome, a condition not unusual after an amputation. He has been unable to work since the accident. He was retired from the service of the Railway Express Agency, Inc., on July 1, 1959, because of a rule which became effective after his injury.

The evidence shows that plaintiff suffered much pain from the time of the accident to the time of trial and will suffer some pain thereafter. He suffered a disability that has prevented his working up to the time of trial and he has suffered an impairment of his capacity to work in the future. The fees of doctors, hospitals, and cost of artificial limbs are stipulated in the amount of $1,939.37.

The defendant assigns as error the giving of instruction No. 9 by the trial court. The part of the instruction complained about states: "You should consider what the evidence may show to be the pain and suffering, if any, so caused and the nature and extent of the same, and the impairment of the capacity, if any, of the plaintiff to earn money in the future, and the reasonable value of the time lost by the plaintiff, if any. You should also consider what the evidence may show with reference to any future pain and suffering, and if you find that the plaintiff will, with reasonable certainty, suffer pain and suffering in the future, you should evaluate such future pain and suffering and assess such an amount as will fairly and reasonably compensate him

for such pain and suffering, reduced to its present worth, and if the evidence shows with reasonable certainty that plaintiff will lose time in the future, you should also allow him reasonable compensation for the future loss of time, reduced to its present worth." It is the contention of the defendant that the cited portion of the instruction permits a recovery for the impairment of the capacity of the plaintiff to earn money in the future and for loss of time in the future, and thereby authorizes the jury to allow a double recovery.

The foregoing paragraph of instruction No. 9 permits a recovery for the following items of damage: (1) Pain and suffering sustained to time of trial, (2) impairment of capacity to earn money in the future, (3) reasonable value of time lost to time of trial, (4) future pain and suffering, and (5) lost time in the future. It seems clear to us that a litigant may not recover for the impairment of future earning capacity and time lost in the future during the same period of time. It permits the jury to allow a double recovery.

The controlling rule is stated in 15 Am. Jur., Damages, § 89, p. 500, as follows: "It has been held that a recovery cannot be had both for loss of time and for diminished earning capacity during the same period, and that an allowance for permanent impairment of earning capacity should run only from the expiration of the period covered by an allowance of damages for lost time."

In McLellan v. Threlkeld, 279 Ky. 114, 129 S. W. 2d 977, the court said: "The instruction as a whole authorized the jury to find for plaintiff both for permanent impairment of his power to earn money and for the loss of time for the same period, to the extent of the lost time, thereby authorizing a duplication for the period of lost time. This was error. The recovery for loss of power to earn money begins when the loss of time ends." See, also, Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.), 26 S. W. 2d 435; Missouri,

Kansas & Texas Ry. Co. v. Beasley, 106 Tex. 160, 155 S. W. 183, 160 S. W. 471.

It is the contention of the plaintiff that the terms "impairment of future earning capacity," "loss of future earnings," and "loss of future time" are synonymous expressions. The case of Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, is cited as proof of the synonymous use of these terms. An examination of that case will show that there was a discussion which included several of the foregoing terms. The opinion does not reflect that such use permitted more than a single recovery. The issue before the court in this case was not before the court in the Borcherding case. We point out that the instruction under consideration as to future loss of time was in addition to any allowance for damages for the impairment of plaintiff's capacity to earn money in the future as indicated by the words of the instruction "you should *also* allow him reasonable compensation for the future loss of time." (Emphasis supplied.)

Plaintiff contends that the instructions as a whole when considered together properly submit the issues to the jury. We have examined the instructions, particularly instruction No. 5 to which our attention was called, and we find no merit in the contention.

Plaintiff asserts that there was a duty on the defendant to tender a more specific instruction. The cases of Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758, and Graves v. Bednar, 171 Neb. 499, 107 N. W. 2d 12, are cited in support of this contention. The plaintiff evidently misconstrued the rule announced in these cases. They hold that if the instructions, when construed together, fairly state the law applicable to the evidence, error cannot be predicated on their giving. But if a litigant deems such instructions not sufficiently specific, it is the duty of such litigant to tender an instruction giving more specific directions. It is the duty of the trial court without request to instruct the jury as to the

proper measure of damages in a personal injury case. If the instruction on the measure of damages is erroneous, a litigant is not precluded from asserting the error because of a failure to tender a proper instruction.

Where instructions are so framed as to mislead the jury into a duplication of an element of recovery, or into an award of damages twice for the same loss, such instruction is prejudicially erroneous. Ready v. Hafeman, 239 Wis. 1, 300 N. W. 480; Alexander v. Kansas City Public Service Co. (Mo. App.), 268 S. W. 2d 451.

In view of the conclusion reached it is not necessary to consider other assignments of error. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.