457

[No. 2860-1.    Division One.    November 24, 1975.]
RICHARD MEISSNER, *Respondent*, v. THE CITY OF SEATTLE, *Appellant.*

JAMES, J., concurs by separate opinion.

*Lane, Powell, Moss & Miller* and *Arthur W. Harrigan, Jr.,* for appellant.

*Lund, Franklin & DeLong* and *Wallace A. DeLong,* for respondent.

FARRIS, J.—The City of Seattle appeals from an adverse judgment entered on a jury verdict in the amount of $80,000 in favor of Richard Meissner for injuries which he suffered when he fell through an open manhole at the Seattle Center Coliseum.

On December 27, 1971, Richard Meissner, a former Seattle Totems hockey player who had been placed on waivers by the team on December 20, picked up his final paycheck and some mail at the general offices of the Seattle Totems. He was advised that he could pick up additional mail and his skates at the Seattle Totems' dressing room in the Coliseum. He proceeded to the Coliseum, entered through the

participants' gate, and fell into an open manhole which was located approximately 8 feet from the door through which he had entered.

Approximately 15 minutes earlier, Lyle Coe, employed by the City of Seattle as a building operating engineer at the Seattle Center, had attempted to open the same door but had found it locked. Because he had forgotten his keys, Coe proceeded to an adjacent building and walked through an underground tunnel which connected the buildings. Upon reaching the Coliseum, he climbed a 5-foot ladder up to the manhole, pushed its 50-pound cover off and to the side, and emerged. His mission was to check the fluid level of a hydraulic ramp some 40 feet from the manhole. He saw no one in the area except two men 150 feet away, anticipated being away for only 2 or 3 minutes, and assumed that he would hear anyone unlocking the door. He did not replace the manhole cover, check the door again, or move a table, which was located near the participants' gate, over the open manhole.

As a result of his fall, Meissner injured his left shoulder and reinjured his right knee. Both injuries caused some permanent damage. After receiving prescribed treatment, Meissner resumed his off-season employment as a carpenter but his career in hockey was ended.

The City assigns error to certain of the trial court's instructions. Its first challenge is to the instruction that it was negligent as a matter of law. The City recognizes that Washington has recently abandoned the wanton or willful misconduct standard as to licensees and adopted, with retroactive application, the reasonable care approach of the Restatement (Second) of Torts § 342 (1965). *Memel v. Reimer*, 85 Wn.2d 685, 688-91, 538 P.2d 517 (1975). In spite of this, the City argues that instructing that it was negligent as a matter of law was error. We disagree. Where the facts are undisputed and but one reasonable inference can be drawn from them, the question of negligence is one of law. Only if different results might be honestly reached by different minds is the question one of fact for the jury.

*Hoops v. Burlington Northern, Inc.*, 83 Wn.2d 396, 402, 518 P.2d 707 (1974); *Elmer v. Vanderford*, 74 Wn.2d 546, 550, 445 P.2d 612 (1968).

The City next challenges instruction No. 6:

> You are instructed that where there is no reason to anticipate a hazard, reasonable care does not require one who is walking in a place provided for the purpose to keep his eyes riveted to the floor immediately in front of his feet.

The City contends that the language of the instruction is argumentative and fails to define reasonable care in appropriate terms for use by a jury. The instruction is an accurate statement of the law. *See, e.g., Smith v. B & I Sales Co.*, 74 Wn.2d 151, 153, 443 P.2d 819 (1968); *Simpson v. Doe*, 39 Wn.2d 934, 937, 239 P.2d 1051 (1952). It merely explained and amplified instruction No. 5, which stated:

> One is charged with the duty of seeing that which he would have seen had he been exercising ordinary care.

In context, it did not confuse or mislead the jury. We find no error in giving it here.

█ █ Finally, the City assigns error to instruction No. 7:

> It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.
>
> If your verdict is for the Plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant.
>
> If you find for the Plaintiff, your verdict *should include the following items and you should consider the following elements*:
>
> The nature and extent of the injuries;
>
> The disability experienced and reasonably certain to be experienced in the future;
>
> The pain and suffering both mental and physical experienced and reasonably certain to be experienced in the future;
>
> The reasonable value of necessary medical care, treat-

ment and services received and those reasonably certain to be required in the future;

The reasonable value of earnings lost, present cash value of the *earnings and earning capacity reasonably certain to be lost in the future.*

The burden of proving damages rests with the Plaintiff and it is for you to determine whether any particular element has been proved by a fair preponderance of the evidence.

Your award must be based upon evidence and not upon speculation, guess or conjecture.

The law has not furnished us with any fixed standards by which to measure pain, suffering, or disability. With reference to these matters you must be governed by your own judgment, by the evidence in the case, and by these instructions.

(Italics ours.) The City argues that instructing the jury that it "should include" the present cash value of "earnings and earning capacity reasonably certain to be lost in the future" was, in effect, directing the jury to award a double recovery because no distinction was drawn between future earnings and future earning capacity. Although a similar instruction was given in *Bartlett v. Hantover*, 9 Wn. App. 614, 619, 513 P.2d 844 (1973), *modified*, 84 Wn.2d 426, 526 P.2d 1217 (1974), the duplication issue was neither argued nor ruled upon therein. Here the issue is squarely before us. We find the instruction defective in two respects. First, the phrase "your verdict should include the following items and you should consider the following elements" is erroneous, since under the note on use to WPI 30.01, 6 Wash. Prac. 146 (1967), the phrase "should include" is to be followed by *undisputed* items and amounts while the term "should consider" is to be followed by *appropriate* elements from WPI 30.02-.16. The trial court failed to make the distinction. It was therefore not clear to the jury that it need not "include" but should merely "consider" the various types of damages listed. Second, the instruction did not distinguish between lost future earnings and lost future earning capacity. We recognize that there is authority on each side of the issue of whether a jury can be confused by

the inclusion of both elements in the list of possible damages without distinguishing between them. *Compare Singles v. Union Pac. R.R.*, 173 Neb. 91, 112 N.W.2d 752, 754-55 (1962) *with Spleas v. Milwaukee & Suburban Transp. Corp.*, 21 Wis. 2d 635, 124 N.W.2d 593, 596 (1963). In our opinion, the better approach is to distinguish loss of earnings from loss of earning capacity by instructing the jury that the award for one can only be given for a period of time different from that for which an award for the other is given, *if* both are awarded. *See Singles v. Union Pac. R.R.*, *supra* at 94 and 22 Am. Jur. 2d *Damages* § 356, at 464 (1965). Since Meissner played hockey and worked during the off-season as a carpenter, the opportunity for error was compounded. We do not ignore the note on use to WPI 30.07, 6 Wash. Prac. 153 (1967), which states unequivocally that "in no event should the instruction refer to a loss of future earnings if earning capacity is included as an element. This clearly would be a duplication of elements." While the note is generally accurate, there *can* be situations when both may be mentioned, *if* the time interval is designated.

We affirm as to the liability of the City and Meissner's lack of contributory negligence but remand for a new trial on the issue of damages to Meissner.

Affirmed in part, reversed and remanded.

SWANSON, J., concurs.

JAMES, J. (concurring)—I concur in the opinion as written by Judge Farris in all respects. But I take this opportunity to express my opinion that neither instruction No. 5 nor 6 was necessary. The stock instruction definition of negligence afforded both counsel full opportunity to evaluate Meissner's conduct with reference to that of a reasonable person under the same or similar circumstances. As appellate judges continue to overwrite, trial judges continue to overinstruct. I am confident that sufficient research would reveal that the language of instruction No. 6 was first used in an appellate opinion in concluding that some plaintiffs' con-

duct was not necessarily contributory negligence. Washington courts have come a long way in achieving precision, both in instructing and in opinion writing. We can do still better.